**People of the State of Illinois, Plaintiff-Appellee, v. Salvatore Abruscato, Defendant-Appellant.**

**Gen. No. 50,891.**

First District, Third Division.
November 17, 1966.

Thomas J. Maloney, of Chicago (Richard H. Devine, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James Veldman, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

Defendant was charged with one Franklin Oaks, in indictment No. 64–2906, with conspiracy to commit the offense of arson. He was also charged with one Franklin Oaks, in indictment No. 64–2907, on three counts of arson.

The defendant was tried alone before a jury on both indictments. He was found guilty of conspiracy in indictment No. 64–2906 and guilty of arson in counts 1, 2 and 3 in indictment No. 64–2907. The trial court vacated and set aside the verdict and judgment on the conspiracy indictment, and the defendant was sentenced to the Illinois State Penitentiary for a term of three to ten years on counts 1, 2 and 3 in indictment No. 64–2907 for arson.

The defendant contends that the People failed to prove under count 1 that the building was damaged without the consent of the owners, and that the People failed to prove under counts 2 and 3 that the building was designed for use as a dwelling.

The evidence was as follows:

On May 19, 1964, a policy of insurance was taken out with the Hartford Fire Insurance Company to cover a building and contents of a restaurant at 2748 North Cicero Avenue, for a period of five years. The beneficiary of the policy was Rose Abruscato, doing business as

Sports Grill. There was also a policy of insurance taken out with the Northwestern National Insurance Company covering the same building and for the contents of the restaurant in that building. The beneficiary was Rosaria Abruscato, doing business as Sports Grill. The inception of this policy, likewise, is May 19, 1964, and covered a period of five years.

About a week before August 16, 1964, Franklin Oaks was with the defendant. The defendant stated to him that "business was kind of bad," and said if the place were to be burned that he could go to work and at least make a decent living. On August 16, 1964, Oaks and the defendant again were together, and had a conversation in a car. At that time the defendant suggested that Oaks go to a service station and tell them he ran out of gas, and they would then give him an oil can which could be filled with fuel to burn the restaurant. Oaks got a six-gallon can and a tire and put them in the trunk of the defendant's car. He obtained this can and tire from one Edward Mincey. The defendant, Mincey and Oaks went into a tavern and the defendant asked Mincey what it would cost him to get help to burn the place. Mincey stated he didn't want any part of it. Oaks and the defendant drove to a gasoline service station at Ashland and Belmont, and Oaks obtained five gallons of fuel oil and put it in the car. They then went to another gas station and got five gallons of oil, and from there they went to the Sports Grill at 8:00 o'clock on Sunday. The defendant opened the front door and went in. Oaks came in the back door which the defendant had opened for him. Oaks brought the oil in with him and set it in the back room. They then left. At about 10:00 p. m. the same day Oaks went back to the Sports Grill and spread oil around the back bar, on the floor, newspapers, and behind the grill and steam table. Oaks had a key which had been given to him by the defendant. Oaks then left and went to Cathy Foreman's house and stayed

until 2:30 a. m. of the morning of August 17, 1964. He then went back to the building in question and went in. He attempted to start the fire from a cigarette but it did not start. At about 3:30 a. m. Oaks tried again and failed. At 4:00 o'clock a. m. Oaks went back and struck a match, and the flame went to the fuel oil. Oaks then ran out, locked the door and went back to the girl's house. He called the defendant's home and told him "the place is all ablaze." Oaks told the defendant where he was and the defendant came over to the girl's house. The girl was asleep when the defendant arrived but she got out of bed. She said to Oaks that he smelled like he had been in a turpentine factory. She washed Oak's clothing. He left and went to the restaurant where he found that the fire was out. The defendant was at the restaurant by that time. Oaks saw the defendant that afternoon at Halsted and Diversey "at a hamburger joint." They talked about the fire. Oaks owed the defendant $100. It was agreed that debt was cancelled.

A detective assigned to the Arson and Bomb Unit on August 18, 1964, investigated a fire at 2748 North Cicero Avenue. He found the first floor badly burned behind and on the floor of the grill. He called the defendant and they went to the premises. The ceiling had been burned and there was fire damage in the basement. He smelled gasoline or oil. The defendant was later arrested.

On behalf of the defendant Jane Burns testified that she was a waitress in a restaurant at Cicero and Diversey and that they were doing "real well."

The defendant testified that he did not with Franklin Oaks damage the building which was owned by Vincent Angeleri and one Mulligan; that he did not set fire to the building with Franklin Oaks for the purpose of defrauding the insurers, nor did he intend to defraud the Northwestern National Insurance Company. He testified that he was not with Oaks on the afternoon and

78

night of August 16, 1964. He further testified that he did not go to Mincey's house, nor did he have a fuel can in his automobile in the middle of August. He also stated that he had never been to Cathy Foreman's house.

On rebuttal Edward Mincey was called by the State. He testified that he had known the defendant and Oaks all of his life. They had come to his house a little after sundown one evening and borrowed a five-gallon kerosene can. They went to a tavern and drank a beer. The defendant asked Mincey "what would it cost to get a place took care of." Mincey testified that he said "I don't do nothing like that."

Cathy Anderson was called as a rebuttal witness. She stated that on August 17, 1964, she saw Oaks at her house. He smelled of oil or kerosene. She knew the defendant since he came to her home after the fire; that Bud (Oaks) called him from her house and told the defendant what he had done. He also told the defendant he could come over and pick up the keys. The defendant came to her house and there was a conversation between the defendant and Oaks. The Cathy Anderson who testified on rebuttal is apparently also known as Cathy Foreman.

Franklin Oaks testified that he did not have permission from the landlord to set the fire.

The defendant's first contention is that the People failed to prove that the building was damaged without the consent of the owners. Count 1, indictment No. 64–2907, is based on section 20–1(a)(1), and Counts 2 and 3 of said indictment are based upon section 20–1(a)(3) of chapter 38 of Ill Rev Stats 1963. Section 20–1 reads in pertinent part as follows:

"20–1. Sec 20–1. ARSON.) A person commits arson when:

"(a) By means of fire or explosive, he knowingly:

79

"(1) Damages any building of another without his consent; or

"(2) Damages any vehicle, aircraft, or watercraft of another designed for use as a dwelling without his consent; or

"(3) With intent to defraud an insurer, damages any building, vehicle, aircraft or watercraft designed for use as a dwelling."

██ People v. Maertz, 375 Ill 478, 32 NE2d 169, involved a proceeding in which the defendants were found guilty of malicious mischief. The statute covering malicious mischief required that the damage to the property be done without the consent of the owner. The defendants on appeal asserted that they were not proved guilty for the reason that it was not shown the windows were broken without the consent of the owners of the property, and the statute made want of consent an element of the crime. The court in that case on page 480 said:

"It is so unlikely that a person or corporation would consent to the violent destruction of his or its property, at least by strangers that there is a sound presumption no such consent was given. Until some evidence is introduced tending to show consent was given, the presumption prevails, and it is not incumbent on the People to prove want of consent. Here there was not a scintilla of evidence of consent. This contention must be overruled."

In the instant case there was not a scintilla of evidence that the owners of the building consented to the damage, and by the same reasoning there is a presumption no such consent was given.

██ In People v. Vozel, 346 Ill 209, 178 NE 473, involving an appeal from a conviction of arson, the court on page 219 said: "The presumption is that a man will not purposely burn his own property." The People in this case

were under no obligation to prove that the owners of the property did not consent, in the absence of any evidence tending to show that there might have been consent on their part. Likewise, the evidence in this case did show that Oaks, involved in setting the fire, did not have the consent of the owners.

█ The second point raised by the defendant was that the People failed to prove under counts 2 and 3 of the indictment that the building was designed for use as a dwelling. Both counts 2 and 3 were based upon section 20–1(a)(3) of the Criminal Code, which we will again set forth for the purpose of clarity:

> "20–1(a)(3) With intent to defraud an insurer, damages any building, vehicle, aircraft or watercraft designed for use as a dwelling."

It is true that there was no evidence that the building which was damaged by fire was designed for use as a dwelling, and the defendant reads this section to mean "with intent to defraud any insurer, damages any building (designed for use as a dwelling), vehicle (designed for use as a dwelling), aircraft (designed for use as a dwelling), or watercraft designed for use as a dwelling." While the wording of this subsection of the statute standing alone would make it appear that the defendant's interpretation is correct, nevertheless, by reading all of the subsections of section 20–1 together it is apparent that the legislature intended to cover by section 20–1(a)(3) all buildings whether or not designed for use as a dwelling. If the interpretation urged by the defendant were found to be the law, then it would be impossible to convict anyone of the crime of arson for damages to a warehouse, factory or any other type of building with intent to defraud an insurer, except one designed for use as a dwelling.

Section 1 of chapter 131 in force prior to January 1, 1965, (Ill Rev Stats 1963, c 131, par 1) read as follows:

"1. RULES TO BE OBSERVED.) sec 1. In the construction of statutes the provisions of Sections 1.01 to 1.22, inclusive, shall be observed, unless such construction would be inconsistent with the manifest intent of the General Assembly or repugnant to the context of the statute."

Section 1.01 of the same statute reads as follows:

"All general provisions, terms, phrases and expressions shall be liberally construed in order that the true intent and meaning of the General Assembly may be fully carried out."

Subsection (a) (1) of section 20-1 of the Criminal Code covers the offense of damaging any building of another without his consent. Subsection (a) (2) covers damages to any vehicle, aircraft or watercraft of another designed for use as a dwelling without his consent. Obviously the purpose of subsection (a) (3) was to include any building as set forth in subsection (a) (1), and also any vehicle, aircraft or watercraft designed for use as a dwelling, as set forth in subsection (a) (2) where the damage was done with intent to defraud an insurer. While we realize that subsection (a) (3) of the act on arson is not artfully drawn, we feel that to construe this statute in the way the defendant urges would be inconsistent with the manifest intent of the General Assembly.

The Committee Comments appended to section 20-1, (SHA chap 38, sec 20-1) state the following:

"Therefore, section 20-1, Arson, includes the more serious elements of knowingly damaging by fire or explosive (1) *any* building of another without his consent, or (2) any vehicle, aircraft or watercraft (of another) designed for use as a dwelling, or (3) *any* property (including personal) with intent to defraud an insurer. These are the more common types of offenses which have been brought

within the statutory definition of arson in other states."

We feel the Committee Comments support the interpretation that we have placed upon this disputed subsection (a)(3). Had that section read as follows, "With intent to defraud an insurer, damages any building; or with intent to defraud an insurer, damages any vehicle, aircraft or watercraft designed for use as a dwelling," the manifest intent of the legislature would have been expressed more clearly.

We therefore find that it was not incumbent upon the People to prove that the building which was damaged was designed for use as a dwelling. For the foregoing reasons the conviction is affirmed.

Affirmed.

SCHWARTZ and DEMPSEY, JJ., concur.