(No. 25892.

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HOMER H. MAERTZ *et al.* Plaintiffs in Error.

*Opinion filed February 14, 1941.*

ODE L. RANKIN, D. J. TADDEUCCI, CAMERON LATTER, and HERBERT M. WETZEL, for plaintiffs in error.

JOHN E. CASSIDY, Attorney General, THOMAS J. COURTNEY, State's Attorney, and A. B. DENNIS, (EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, and RICHARD H. DEVINE, of counsel,) for the People.

Mr. JUSTICE FARTHING delivered the opinion of the court:

A Cook county criminal court jury found Homer H. Maertz, Fred Pokorny and Douglas Campbell guilty of malicious mischief and that the value of the property destroyed was in excess of $15. They received sentences to the penitentiary for from one to ten years and have sued out this writ of error to review the judgment of conviction. Joseph Schimpf and George Heppner were tried with them and acquitted.

The malicious mischief charged was that defendants broke plate glass windows of Goldblatt Bros, Inc., a Chicago department store. The breaking was done at about 2:30 o'clock in the morning of October 23, 1939. On the evening before this, defendants had attended a meeting of the Silver Shirts, an anti-Semitic organization. Later they went to a tavern and drank considerable beer. When the tavern closed at 2:00 A. M. one of the defendants procured a bar of soap with which they were going to soap windows. The import of a soap inscription they put on the window of one tavern was "Down With the Jews"! When defendant Maertz, who did the writing, was told the tavern owner was a Greek, he wrote on the window "This is a white man." Shortly afterwards they all got in Schimpf's automobile and drove to an alley near Goldblatt's. Maertz put similar markings on Goldblatt's windows. He went back to the car whereupon someone remarked that the job was not finished. All of the defendants except Schimpf then went back to the store and bricks were thrown through the windows. Written statements of defendants were taken

and admitted in evidence, which contained incriminating admissions. There was evidence, also, that at a "show up" at the Chicago detective bureau Maertz, Campbell and Pokorny admitted breaking the windows. Maertz denied making any such oral admission.

The contention cannot be sustained that the proof failed to show the value of the property destroyed was in excess of $15. Without contradiction Thomas A. Murphy testified that for the past six years he had been employed by the American Glass Company as a surveyor and estimator, and that the general business of his employer is plate glass replacement. He went to Goldblatt's, found five windows were broken, took down the measurements and made an estimate that the glass alone, without the labor required to install it, would cost $282.50. He obtained his figures from a standard glass-book that is used throughout the country and from its list price he deducted the discount generally given in the Chicago area. The argument that this was merely an estimate and did not prove the value of the property destroyed is without merit.

Defendants assert they were not proved guilty for the reason it was not shown the windows were broken without the consent of the owners of the property, and that the statute makes want of consent an element of the crime. The comptroller of Goldblatt Bros., Inc., testified for the People that he had examined all the minutes of the corporation and did not find a resolution authorizing defendants to break the windows. Defendants argue this was not the best evidence and also that it was not shown that none of the officers of the corporation had authorized the breaking. It is unnecessary for us to pass upon these specific questions. It is so unlikely that a person or corporation would consent to the violent destruction of his or its property, at least by strangers, that there is a sound presumption no such consent was given. Until some evidence is introduced tending to show consent was given, the pre-

sumption prevails, and it is not incumbent on the People to prove want of consent. Here there was not a scintilla of evidence of consent. This contention must be overruled.

During the preliminary hearing outside the presence of the jury to determine whether defendant Pokorny's statement, exhibit No. 10, was voluntarily made, the court refused to permit Pokorny to testify that immediately before he signed the statement he saw defendant Heppner, who was bruised about the face, and that Heppner told him the police had beaten him in order to obtain a statement. This ruling is assigned as error. The purpose of this offered testimony was to show Pokorny signed his statement because he feared similar treatment if he did not. Pokorny admitted that the police officers asked him questions which he answered freely and voluntarily and that at that time he had not seen or talked to Heppner. The fact that he later saw Heppner and then signed the typewritten statement, does not make the statement involuntary or render it inadmissible.

There was no error in giving People's instructions Nos. 16 and 25 on the question of confessions. It is admitted they correctly state the law and are applicable to People's exhibit No. 10. But defendants argue they should have distinguished between a confession and a statement containing incriminating admissions, which they say is all People's exhibit No. 11 amounted to. The answer to this contention is that defendants tendered no such instruction. It is not the duty of the court to prepare instructions for defendants. (*People* v. *Hartwell,* 341 Ill. 155; *People* v. *Rewland,* 335 id. 432.) The instructions criticized were correct statements of the law. If they did not apply to exhibit No. 11 but only to exhibit No. 10, defendants should have requested the court to so instruct the jury. Not having done so, they cannot now complain.

Defendants also contend that instruction No. 2 on the question of flight is not based on any evidence in the record.

The police officers testified they saw a man running to the Schimpf car; that he got in and drove away; that the police pursued it but the Schimpf car eluded them. It is not disputed that the five defendants left the scene in that car. For this reason the instruction was properly given.

Defendants' refused instructions Nos. 11 to 16 to the effect that if the breaking of the windows was spontaneous and the acts of individuals, then only such defendants as threw the missiles which had broken the windows could be found guilty, are not supported by the evidence and were properly refused.

We cannot agree there was prejudicial error in the fact that the jury found the "value of the property so destroyed" was in excess of $15, instead of finding in the language of the statute that the "damage done" exceeded $15. The argument that there may be a difference between the damage done and the value of the property destroyed is puerile.

Over objection the People introduced a great amount of evidence tending to prove defendants were members of the Silver Shirts and what are the objects and purposes of that organization. The People claim their purpose was to show motive, and that the breaking of these windows was in furtherance of the objects of the Silver Shirts,—viz., to oppose Jews. It is claimed the court erred in admitting such evidence. There is no proof that the owners or officers of the Goldblatt corporation were members of the Jewish race. This court cannot take judicial notice that they were or were not. In view of this record there is grave doubt on this score that this evidence was admissible. However, its admission was error for more fundamental reasons. Assuming a case might be presented where it would be proper to prove defendants were members of an organization which advocated Anti-Semiticism, it was not proper to load the record with voluminous evidence of the extent of their activities as such members. Nor was it proper to show in detail the statements, beliefs and aims of

various officers of the organization, especially where, as here, it was not shown defendants were aware of them. It is difficult to determine from this record whether defendants were tried for breaking windows or for being members of an anti-Jewish organization. For example, the court permitted the reading to the jury of "Chief Pelley's Silver Program." This is filled with invective. It calls the President of the United States a "Sephardi Jew," and makes similar references to most of the officers of our Federal government. It pledges the ousting of the President and most of the men prominent in public life today. Reading such a vitriolic harangue to the jury undoubtedly prejudiced them against the defendants. It confused the issue and deprived defendants of a fair trial.

For this reason the judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*