892 P.2d 455

**STATE of Hawai'i, Respondent–Appellee,**

v.

**John G. PONE, Petitioner–Appellant.**

No. 16081.

Supreme Court of Hawai'i.

April 6, 1995.

Theodore Y.H. Chinn, Deputy Public Defender, on the briefs, Honolulu, for petitioner-appellant John G. Pone.

Steven H.S. Wong, Deputy Pros. Atty., on the briefs, Honolulu, for respondent-appellee State of Hawai'i.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

LEVINSON, Justice.

On January 23, 1992, following a bench trial in the District Court of the First Circuit, the petitioner-appellant John G. Pone was convicted of criminal property damage in the fourth degree, a petty misdemeanor, in violation of Hawai'i Revised Statutes (HRS) § 708–823 (1985), for having intentionally damaged the front door of the complainant's apartment without his consent. Pone was sentenced to a fine of $25.00 and ordered to

1. HRPP 29(a) provides in relevant part:
   **Motion Before Submission to Jury.** Motions for directed verdict are abolished and motions for judgment of acquittal shall be used in their place. The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses alleged in the charge after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses....

assume the cost of repairing the door. He appealed the conviction on the grounds (1) that the district court had erroneously denied his motion for judgment of acquittal at the close of the prosecution's case, pursuant to Hawai'i Rules of Penal Procedure (HRPP) 29(a) (1981),[1] and (2) that the evidence adduced by the prosecution was insufficient as a matter of law to support the district court's judgment of conviction. The Intermediate Court of Appeals (ICA) affirmed Pone's conviction in a published opinion. *State v. Pone*, No. 16081, slip op., 1994 WL 14010 (Haw.Ct. App. Jan. 21, 1994).

On January 31, 1994, Pone filed an application for a writ of certiorari with this court, asserting that "the ICA gravely erred in holding that in a criminal prosecution for criminal property damage which defines 'consent' as an element of the offense, a presumption exists that the person whose property was allegedly damaged would not consent to the damage unless the defendant introduces evidence that consent was given." Because a portion of the ICA's decision is obviously inconsistent with this court's case law regarding the relationship between legal presumptions and improper burden shifting, we granted certiorari on February 4, 1994. *See* HRS § 602–59(b) (1985).

Despite the ICA's partially erroneous analysis, and for the reasons set forth below, we affirm.

## I. BACKGROUND

Prior to the commencement of trial[2] on March 17, 1992, the deputy prosecuting attorney (DPA) orally charged Pone as follows:

[DPA]: Mr. John Pone, on or about January 22, 1992, in the District of Honolulu, City and County of Honolulu, State of [Hawai'i], you did commit the offense of

HRPP 1 (1988) provides that the HRPP "shall govern the procedure in the courts of the State in all penal proceedings, with the exceptions stated in Rule 54." The exceptions stated in HRPP 54 are not material to this appeal.

2. The entire trial transcript, including the cover sheet, index, and court reporter's certificate, is only twenty-eight pages in length.

Criminal Property Damage in the Fourth Degree by intentionally damaging the property of another[ ] without his consent[,] to wit: the victim in this case is Kenneth Townsend, that's in violation of Section 708–823 of the [Hawai'i] Revised Statutes.

Pone represented to the court that he understood the charge and entered a plea of not guilty.

Other than the testimony of the investigating police officer, who confirmed the nature of the property damage at issue, the respondent-appellee State of Hawai'i's (prosecution's) case consisted of the testimony of the "victim," Kenneth Townsend. Townsend testified as follows: On January 22, 1992, he owned and resided in an apartment located at 417 Namahana Street, in the City and County of Honolulu. He was alone in the apartment watching television in his bedroom when he heard a series of "bangings" on the locked front door of the apartment. Inasmuch as Townsend's friends customarily called him before visiting, he did not choose to respond to the "bangs." After "about maybe two hours," following more "very loud knocking," Townsend "heard the door break." Pone, whom Townsend knew to be a friend of another individual who was Townsend's tenant and roommate at the time,[3] then "appeared at the couch where [Townsend] was watching TV." Townsend asked Pone, who appeared to be intoxicated and irate, to leave. When Pone refused to do so, Townsend stated that he was going to call the police, whereupon Pone vacated the premises. Shortly thereafter, Townsend discovered that the front door to the apartment, which, in addition to being locked, had previously been in good working order, was damaged to the point that it would no longer shut. Townsend expressly testified that he had not given Pone permission to damage the door.

At the close of the prosecution's case, defense counsel moved for a judgment of acquittal, *inter alia*, on the alternative grounds that (1) the prosecution had failed to adduce prima facie evidence that Pone had caused

the damage to the door, and (2) even if Pone had caused the damage, the prosecution had failed to establish that the tenant had not consented to it. The DPA opposed the motion on the basis that "[w]e have in fact proved that [there] was property damage and [that] it was the home of the victim [*i.e.*, Townsend] ... [and] that it was without consent." "[V]iewing the evidence in the light most favorable to the [prosecution] for purposes of determining [a] motion for judgment of acquittal," the district court found "that there [was] sufficient evidence to support a prima facie case for criminal property damage in the fourth degree" and denied the motion.

The defense rested without putting on a case, after which the parties made final argument. The district court proceeded to find Pone guilty as charged, ruling from the bench in relevant part as follows:

> [I]n this case we have the testimony of the victim whose property is at issue ..., and that is Mr. Townsend, who was in his apartment, [and] heard some banging on the door. He chose not to answer the door which is certainly his prerogative.... [When] one owns [one's] home one need not respond to the banging of the door if one chooses not to do so.... The evidence indicat[es] further that ... [the door] was locked; that there was no one else present in this interim between the time his roommate left ... until the time [Pone] appeared in his door.
>
> The Court is satisfied based upon that and the other evidence introduced by the [prosecution] that [Pone] ... intentionally damaged the property of Mr. Townsend thereby banging in and destroying the lock on his door and knocking the door down to obtain entrance into [Townsend's] home.
>
> ... So based upon that, I am satisfied beyond a reasonable doubt that Mr. Pone is guilty of criminal property damage in the fourth degree....

Pone timely appealed his conviction.

---

**3.** Townsend testified that the tenant, whose tenure in the apartment spanned "a few months," was "at work" at the time of the incident in question.

## II. STANDARDS OF REVIEW

### A. Motion For Judgment Of Acquittal

The standard to be applied by the trial court in ruling upon a motion for a judgment of acquittal is whether, upon the evidence viewed in the light most favorable to the prosecution and in full recognition of the province of the [trier of fact], a reasonable mind might fairly conclude guilt beyond a reasonable doubt. An appellate court employs the same standard of review.

*State v. Alston,* 75 Haw. 517, 528, 865 P.2d 157, 164 (1994) (citations omitted).

### B. Sufficiency Of The Evidence To Support A Conviction

We have long held that evidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or a jury. The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact. Indeed, even if it could be said in a bench trial that the conviction is against the weight of the evidence, as long as there is substantial evidence to support the requisite findings for conviction, the trial court will be affirmed.

"Substantial evidence" as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a [person] of reasonable caution to support a conclusion. And as trier of fact, the trial judge is free to make all reasonable and rational inferences under the facts in evidence, including circumstantial evidence.

*State v. Batson,* 73 Haw. 236, 248–49, 831 P.2d 924, 931, *reconsideration denied,* 73 Haw. 625, 834 P.2d 1315 (1992) (citations omitted). *See also State v. Reed,* 77 Hawai'i 72, 81–82, 881 P.2d 1218, 1227–28 (1994); *In re John Doe, Born on January 5, 1976,* 76 Hawai'i 85, 92–93, 869 P.2d 1304, 1311–12

(1994); *State v. Silva,* 75 Haw. 419, 432, 864 P.2d 583, 589–90 (1993).

## III. DISCUSSION

### A. Elements Of The Offense

A person commits the offense of criminal property damage in the fourth degree, in violation of HRS § 708–823(1), if he or she "intentionally damages the property of another without his [or her] consent."

We noted in *State v. Chung,* 75 Haw. 398, 411, 862 P.2d 1063, 1070 (1993), that:

"HRS § 701–114(1)(a) and (b) (1985) requires proof beyond a reasonable doubt of each element of the offense, as well as 'the state of mind required to establish each element of the offense.'" *State v. Pinero,* 75 Haw. 282, 300, 859 P.2d 1369, 1378 (1993). Moreover, HRS § 702–204 (1985) provides in relevant part that "a person is not guilty of an offense unless the person acted intentionally, knowingly, recklessly, or negligently, as the law specifies with respect to each element of the offense." Finally, HRS § 702–207 (1985) provides that "[when] the definition of an offense specifies the state of mind sufficient for the commission of that offense, without distinguishing among the elements thereof, the specified state of mind shall apply to all elements of the offense, unless a contrary purpose plainly appears."

*See also In re [John] Doe, Born on January 5, 1976,* 76 Hawai'i [at] 92, 869 P.2d [at] 1311.... In addition, "[pursuant] to HRS § 702–205 (1985), the requisite state of mind applies to such conduct, attendant circumstances, and results of conduct as are specified by the definition of the offense." *Chung,* 75 Haw. at 411–12 n. 8, 862 P.2d at 1071 n. 8.

*State v. Kupau,* 76 Hawai'i 387, 390–91, 879 P.2d 492, 495–96 (1994) (footnote and some brackets omitted). *See also State v. Gaylord,* 78 Hawai'i 127, 136–37, 890 P.2d 1167, 1176–77 (1995).

Inasmuch as the *intent* to damage the property of another must be proved in order to commit the offense of criminal property damage in the fourth degree, in violation of

HRS § 708–823, and no contrary purpose "plainly appears" on the face of the statute, *see* HRS § 702–207, it therefore follows that "intent" is the requisite state of mind for each of the elements set forth in HRS § 708–823.[4]

■ Accordingly, there were three material elements of the offense of criminal property damage in the fourth degree, as prohibited by HRS § 708–823 and alleged in the oral charge against Pone, each of which the prosecution was required to prove beyond a reasonable doubt in order to establish guilt. These three elements were: (1) that Pone damaged the property (*i.e.,* the relevant conduct) of Townsend (*i.e.,* the attendant circumstance that the property was that of another); (2) that Pone did so without Townsend's consent (*i.e.,* another attendant circumstance); and (3) that Pone did so intentionally.

■ HRS § 708–800 (Supp.1992) defines "property of another" in relevant part to mean "property which any person, other than the defendant, has possession of or any other interest in, even though the possession or interest is unlawful[.]" Thus, at the time of the incident in question, Townsend's tenant had some "interest" in the damaged door. For this reason, Pone urges that the prosecution was required to prove beyond a reasonable doubt that the tenant had not somehow consented to the damage.

Pone's argument is a red herring. It is undisputed that the damaged door was Townsend's property, inasmuch as Townsend was the owner of the apartment. Pone was expressly charged with damaging *Townsend's* property without *Townsend's* consent; by the plain language of the oral charge, he was not charged with damaging the *tenant's* property without the *tenant's* consent. *See supra* at 263, 892 P.2d at 456. Pone has cited no authority (and we are aware of none)

suggesting, on the record before us, that the tenant could possess the authority to consent to the damage on Townsend's behalf. Accordingly, proof of the tenant's nonconsent to the alleged damage to Townsend's property was not a material element of the prosecution's case in chief. As will become clear *infra,* it is precisely this red herring that generated the confusion in the ICA's opinion regarding presumptions and improper burden shifting.

### B. *Presumptions, Permissible Inferences, Circumstantial Evidence, And Improper Burden Shifting*

We now reach the precise issue that necessitated our grant of certiorari in this case. The ICA analyzed Pone's contention that because "lack of the owner's consent is an element of criminal property damage under HRS § 708–823, the [prosecution] was required to prove [Townsend's] and [the tenant's] non-consent to [Pone's] damaging the door," *Pone,* slip op. at 2, as follows:

The question of what evidence is necessary to satisfy the [prosecution's] burden of proving non-consent in a criminal property damage case has not previously been addressed by our appellate courts. However, the Supreme Court of Illinois, whose criminal property damage statute is similar to Hawai'i's, has held that in the trial of a defendant charged with criminal property damage, a presumption exists that the person whose property was allegedly damaged would not consent to the violent destruction of the property; thus, *until the defendant introduces evidence that such consent was given, the [prosecution] is not required to show the non-consent. People v. May,* 46 Ill.2d 120, 124, 262 N.E.2d 908, 910 (1970) (citing *People v. Maertz,* 375 Ill. 478, 480–81, 32 N.E.2d 169, 171 (1941)).

We apply the same presumption in this case, and since [Pone] offered no evidence

---

4. HRS § 702–206 (1985) provides in relevant part:

**Definitions of states of mind.** (1) "Intentionally."
(a) A person acts intentionally with respect to his [or her] conduct when it is his [or her] conscious object to engage in such conduct.
(b) A person acts intentionally with respect to attendant circumstances when he [or she] is aware of the existence of such circumstances or believes or hopes that they exist.
(c) A person acts intentionally with respect to a result of his [or her] conduct when it is his [or her] conscious object to cause such a result.

that [the tenant] consented to the damage, the [prosecution] was not required to prove otherwise.

*Id.* (emphasis added).[5]

The quoted portion of the ICA's opinion is erroneous on at least three grounds. First, as we have indicated, lack of prior consent by the tenant to the damage to Townsend's property was not a material element of the offense of criminal property damage in the fourth degree in the manner charged against Pone. Second, even if Pone had sought to adduce evidence that the tenant had purported to give prior consent to the damage, the evidence would have been irrelevant, and therefore inadmissible,[6] without a further showing that the tenant somehow possessed the authority to give consent on Townsend's behalf. Third, and most importantly for present purposes, the ICA confused the fundamental—and constitutionally critical—distinction between legal *presumptions* having the effect of shifting the prosecution's burden of proof to the defendant, on the one hand, and legitimate *inferences* drawn circumstantially from the direct evidence presented, on the other.

### 1. Pre–Hawai'i Penal Code case law (Cuevas)

This court appears initially to have addressed the third ground in *State v. Cuevas,* 53 Haw. 110, 488 P.2d 322 (1971). Following a jury trial, Cuevas appealed his conviction of second degree murder under a statute, now repealed, that required the prosecution to prove that he had killed the victim with "malice aforethought and without authority, justification, or extenuation by law." *Cuevas,* 53 Haw. at 111, 488 P.2d at 323. The trial court, tracking the language of a related statute, had instructed the jury that "[w]hen the act of killing another is proved, malice aforethought shall be presumed, and the burden shall rest upon the party who committed the killing to show that it did not exist, or a legal justification or extenuation therefor." *Id.* At issue was the constitutionality of the statute upon which the jury instruction was based. Holding the statute unconstitutional and therefore reversing Cuevas's conviction, this court engaged in the following analysis:

Under the language of the statute, the burden imposed upon the accused is not merely a burden of going forward with the evidence or of raising a reasonable doubt, but is a burden of persuasion of the nonexistence of an essential element of the crime. . . .

. . . .

We hold that the statute is invalid. Under our legal system, the burden is always upon the prosecution to establish every element of crime by proof beyond a reasonable doubt, never upon the accused to disprove the existence of any necessary element.[7]

Thus, it is stated in *Davis v. United States,* 160 U.S. 469, 487 [16 S.Ct. 353, 358, 40 L.Ed. 499] . . . (1895), that "the burden of proof, as those words are understood in criminal law, is never upon the accused to establish his innocence, or to disprove the facts necessary to establish the crime for which he is indicted. It is on the prosecution from the beginning to the end of the trial, and applies to every element necessary to constitute the crime." A similar statement appears in *Christoffel v. United States,* 338 U.S. 84, 89 [69 S.Ct. 1447, 1450, 93 L.Ed. 1826] . . . (1949).

. . . .

5. Although the ICA accurately characterized the holding in *Maertz,* as reaffirmed in *May,* we note that the *Maertz* court cited no authority for its invocation of the "presumption" in question, and the *May* court simply cited to *Maertz.* Thus, the *Maertz/May* "presumption" is pure *ipse dixit.* As demonstrated *infra,* it would appear that the *Maertz* and *May* courts were actually describing an *inference* that they drew from the particular records before them.

6. *See Kealoha v. County of Hawai'i,* 74 Haw. 308, 314–15, 319–20, 844 P.2d 670, 674, 676 (rulings on admissibility of allegedly relevant evidence, within meaning of Hawai'i Rules of Evidence 401 and 402, being susceptible to only one correct result, are reviewed under right/wrong standard), *reconsideration denied,* 74 Haw. 650, 847 P.2d 263 (1993).

7. This principle is now codified in HRS §§ 701–114(1)(a) and (b) (1985), 702–204 (1985), 702–205 (1985), and 702–207 (1985). *See supra* at 265, 892 P.2d at 458.

The right of an accused to be convicted only upon proof by the prosecution of all of the elements of the crime charged against him beyond a reasonable doubt is a constitutionally protected right.

·It is stated in *In re Winship,* 397 U.S. 358, 364 [90 S.Ct. 1068, 1073, 25 L.Ed.2d 368] ... (1970): "Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."

The statute being constitutionally invalid, the circuit court erred in instructing the jury in the statutory language. But the question remains whether such error calls for automatic reversal of the judgment.

The prosecution contends that the instruction was harmless in the context of the entire charge to the jury, which included an instruction regarding the presumption of innocence of the accused and an instruction· regarding the burden of proof resting upon the prosecution.

. . . .

We do not think that an instruction to the jury ... couched in the language of the statute in question can ever be harmless. The error is neither unimportant nor insignificant; it infringes upon a basic right of the accused; it raises a reasonable possibility that it might have contributed to the conviction; and we cannot say that it was harmless beyond a reasonable doubt.

*Id.* at 112–16, 488 P.2d at 324–25. *See also State v. Bumanglag,* 63 Haw. 596, 617–18, 634 P.2d 80, 94 (1981).

### 2. *Effect of the Hawai'i Penal Code*

In 1972, the legislature enacted the Hawai'i Penal Code (HPC), HRS Title 37, chs. 701 through 712, of which HRS § 708–823 is a part. 1972 Haw.Sess.L.Act 9, § 1 at 32–142. The HPC, as originally enacted, took effect on January 1, 1973. 1972 Haw.Sess. L.Act 9, § 3 at 142. HRS § 701–117 (1985), entitled "[p]rima facie evidence," provided that "[p]rima facie evidence of a fact is evidence which, if accepted in its entirety by the trier of fact, is sufficient to prove the fact, provided that no evidence negativing the fact, which raises a reasonable doubt in the mind of the trier of fact, is introduced." [8] The commentary on HRS § 701–117 [9] provides in relevant part:

In drafting the [HPC], *we have substituted the concept of prima facie evidence for presumptions,* which appear to create insurmountable difficulties for lawyers, courts, and juries. Often it is desirable to enable the prosecution to get to the [trier of fact] on something less than positive proof of a fact which may be almost solely within the knowledge of the defendant. . . . Thus, the prima facie evidence rule helps the prosecution to get its case to the [trier of fact] without necessarily meeting its burden of persuasion. This is consistent with modern rules of evidence.

(Emphasis added.)

With the advent of the HPC, this court was confronted with the distinction between legal presumptions, which improperly shifted the prosecution's burden of proof, and "permissible inferences," which did not. In *State v. Dwyer,* 57 Haw. 526, 560 P.2d 110 (1977), this court reviewed a conviction of negotiating a worthless negotiable instrument in violation of HRS § 708–857 (1985).[10] Pursuant

---

**8.** The legislature amended HRS § 701–117 in 1986. 1986 Haw.Sess.L. Act 314, § 3 at 594. As amended, the statute now reads: "Prima facie evidence of a fact is evidence which, if accepted in its entirety by the trier of fact, is sufficient to prove the fact. Prima facie evidence provisions in this Code are governed by section 626–1 [Hawai'i Rules of Evidence], rule 306." HRS § 701–117 (Supp.1992). *See infra* at 271, 892 P.2d at 464.

**9.** "[A]lthough not direct evidence of legislative intent, we look to the commentary to the Hawai'i

Penal Code (HPC), HRS Title 37, 'as an aid in understanding' [it]." *State v. Gaylord,* 78 Hawai'i 127, 139, 890 P.2d 1167, 1179 (1995) (citing HRS § 701–105 (1985) and *State v. Alo,* 57 Haw. 418, 426–27, 558 P.2d 1012, 1017 (1976), *cert. denied,* 431 U.S. 922, 97 S.Ct. 2193, 53 L.Ed.2d 235 (1977)).

**10.** HRS § 708–857 was enacted in 1972 as part of the HPC. 1972 Haw.Sess.L. Act 9, pt. of § 1 at 104–05. It has never been amended.

to the statute, a person commits the offense of negotiating a worthless negotiable instrument if he or she "intentionally issues or negotiates a negotiable instrument knowing that it will not be honored by the maker or drawee." HRS § 708–857(1). On appeal, the defendant asserted that the prosecution had failed to adduce substantial evidence that he had signed the check (*i.e.,* negotiable instrument) in question knowing that it would not be honored by his bank. *Dwyer,* 57 Haw. at 527, 560 P.2d at 111. The "gravamen of the offense" being "the issuance of a check knowing at that time that it will not be honored," the "prosecution ... had the burden of proving the existence of [the defendant's] knowledge" on the day he signed and delivered the check to a third party. *Id.* at 527–28, 560 P.2d at 111. At trial, the prosecution had sought to discharge its burden by relying on HRS § 708–857(2)(b), which provides that: (1) when a check is dishonored due to lack of funds; (2) upon presentation within a reasonable time; (3) and the drawer fails to make the check good within ten days of receiving actual notice of dishonor; (4) the foregoing facts constitute prima facie evidence that the drawer knew when he or she issued the check that it would not be honored upon presentation. *Id.* at 528, 560 P.2d at 111–12.

Having reviewed the record before it, the *Dwyer* court observed that "[t]he facts required by the statute are present in this case, but aside from these facts and any inferences which may properly be drawn therefrom the record contains no direct or circumstantial evidence that the defendant possessed the requisite knowledge." *Id.* at 528, 560 P.2d at 112. Thus, the *Dwyer* court concluded that "we are left with only the prima facie evidence provided by HRS § 708–857(2)(b) to support the conviction." ·*Id.* The *Dwyer* court therefore reversed the defendant's conviction based on the following analysis:

Wigmore points out that the designation of certain facts as "prima facie evidence" of an ultimate fact may be viewed either as creating a presumption which shifts the burden of proof or as merely creating a permissible inference of fact. In the first sense[,] the statute imposes on the accused the burden of overcoming the presumption by evidence, in default of which the presumption requires that guilt be found. In the second sense, the trier of fact is permitted but not compelled to draw an inference of guilt from the circumstances which constitute a prima facie case, and it is for the trier of fact to determine whether a reasonable doubt of guilt exists despite the permitted inference, whether or not the accused has offered any evidence. Wigmore, Evidence § 2494 (3d ed. 1940). Also, see McCormick, Evidence § 342 (2d ed. 1972). We have held invalid a statutory presumption which requires the accused to disprove the existence of any element of the offense. *State v. Cuevas,* 53 Haw. 110, 488 P.2d 322 (1971). It is apparent from the commentary to HRS § 701–117 that the draftsmen intended that the statute be read in the second sense, as permitting but not compelling the inference of guilt, and we conclude that it should be given this effect.... But a constitutional question still remains.

The requirements of due process impose limitations on the power of the legislature to authorize inferences of fact to be drawn. For this purpose, it does not matter whether the statute treats the evidence as making out a prima facie case or as creating a presumption. Whichever characterization is used, the statute may authorize the inference *only if there is a natural and rational evidentiary relation between the facts proven and the ultimate fact* which the statute authorizes to be found. The constitutional validity of such a statutory rule of evidence is to be tested as follows:

A statutory presumption cannot be sustained *if there be no rational connection between the fact proved and the fact presumed, if the inference of one from proof of the other is arbitrary because of a lack of connection between the two in common experience.* (*Tot v. United States,* 319 U.S. 463, 467 [63 S.Ct. 1241, 1245, 87 L.Ed. 1519] (1943)).

*Id.* at 529–30, 560 P.2d at 112–13 (emphasis added) (some citations omitted). *See also Bumanglag,* 63 Haw. at 618, 634 P.2d at 94.

This court revisited the legal presumption/permissible inference dichotomy in *State v. Brighter,* 61 Haw. 99, 595 P.2d 1072 (1979). Brighter was convicted of promoting a detrimental drug in the second degree. He appealed on the basis that the trial court had erroneously given a jury instruction (State's Requested Instruction No. 2) relating to the statutory inference set out in HRS § 712–1251(1) (1985),[11] which he contended had impermissibly shifted the burden of proof to the defense, thereby violating his due process right to be convicted only upon proof of guilt beyond a reasonable doubt. *Brighter,* 61 Haw. at 100, 102, 595 P.2d at 1073, 1075.

State's Requested Instruction No. 2, as given, advised the jury that "[t]he presence of a detrimental drug in a motor vehicle, other than a public omnibus, is prima facie evidence of knowing possession thereof by each and every person in the vehicle at the time the drug was found." *Id.* at 102 n. 6, 595 P.2d at 1075 n. 6. For reasons not relevant to our analysis, the *Brighter* court salvaged the constitutionality of HRS § 712–1251 by construing it narrowly and thus found "no impropriety per se in the content of State's Requested Instruction No. 2 as given." *Id.* at 109–10, 595 P.2d at 1079. However, the following discussion regarding prima facie evidence and the character of permissive inferences is germane:

> The phrase "prima facie evidence", defined in HRS § 701–117 . . . , constitutes a permissive inference, thus permitting—but not compelling—the inference of guilt. In *Dwyer, supra,* this Court stated that a statute may authorize an inference only if there is a natural and rational evidentiary relation between the facts proven and the ultimate fact which the statute authorizes to be found.
>
> [Brighter] urges, however, that an inference may be sustained only where the fact inferred follows *beyond a reasonable doubt* from the fact proven. Absent such a relationship between the fact inferred and the fact proven, it cannot, [Brighter] asserts,

be said that a defendant has been convicted upon proof beyond a reasonable doubt of all the elements of the offense.

Although courts have acknowledged the ability of legislatures to provide that a jury may infer from one fact another fact essential to a finding of guilt, *see Tot v. United States,* 319 U.S. [at] 467 [63 S.Ct. at 1244] . . . , much debate has centered around the strength of the relationship which must exist between the fact proven and the fact inferred. In *Tot v. United States, supra,* the Supreme Court declared that a "rational connection" must exist between the fact proven and the fact inferred in order to satisfy the requirements of due process. This "rational connection" test was followed in *United States v. Gainey,* 380 U.S. 63 [85 S.Ct. 754, 13 L.Ed.2d 658] . . . (1965), and in *United States v. Romano,* 382 U.S. 136 [86 S.Ct. 279, 15 L.Ed.2d 210] . . . (1965).

Later, in *Leary v. United States,* 395 U.S. 6, 36 [89 S.Ct. 1532, 1548, 23 L.Ed.2d 57] . . . (1969), the Supreme Court determined that a criminal statutory inference is unconstitutional "unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend." However, because the Court in *Leary* found the statute in question to be unconstitutional under the "more likely than not" standard, it went on to state that "we need not reach the question whether a criminal presumption [inference] which passes muster when so judged must also satisfy the criminal reasonable doubt standard if proof of the crime charged or an essential element thereof depends upon its use." 395 U.S. at 36 n. 64 [89 S.Ct. at 1548 n. 64]. . . .

In *Turner v. United States,* 396 U.S. 398 [90 S.Ct. 642, 24 L.Ed.2d 610] . . . (1970), the Court utilized both the "more likely than not" and the "reasonable doubt" standards to assess the validity of four statuto-

11. HRS § 712–1251(1) provides in relevant part that "the presence of a dangerous drug, harmful drug, or detrimental drug in a motor vehicle, other than a public omnibus, is prima facie evidence of knowing possession thereof by each and

every person in the vehicle at the time the drug was found." HRS § 712–1251 was enacted in 1972 as part of the HPC. 1972 Haw.Sess.L. Act 9, pt. of § 1 at 137. It has never been amended.

ry inferences relating to possession of heroin and cocaine. In deciding that the inferences relating to heroin were valid under either standard, the Court ... refrained from expressing a preference for the use of one test over the other.

Finally, in *Barnes v. United States,* 412 U.S. 837 [93 S.Ct. 2357, 37 L.Ed.2d 380] ... (1973), the Court again reserved judgment as to the determinative standard by which the validity of statutory inferences are to be assessed. After acknowledging that *Gainey, Romano, Leary,* and *Turner* fail to resolve the issue, the Court in *Barnes* merely concluded that "if a statutory inference submitted to the jury as sufficient to support conviction satisfies the reasonable doubt standard (that is, the evidence necessary to invoke the inference is sufficient for a rational juror to find the inferred fact beyond a reasonable doubt) as well as the more-likely-than-not standard, then it clearly accords with due process." 412 U.S. at 843 [93 S.Ct. at 2361–62]. . . .

. . . .

... [W]e find no need to resolve the question whether an inference satisfying the "more likely than not" requirement must also comply with the criminal reasonable doubt standard. . . .

*Id.* at 103–05, 109, 595 P.2d at 1075–76, 1078 (citations, footnotes, and some internal quotation marks omitted) (emphasis and some brackets in original).

Notwithstanding that the *Brighter* court deemed State's Requested Instruction No. 2, as given, to set forth a legitimate "permissible inference," it nevertheless expressly disapproved the giving of State's Requested Instruction No. 4, which provided that "[p]rima facie evidence of a fact is evidence which if accepted in its entirety by the trier of fact, is sufficient to prove the fact, provided that no evidence negativing the fact, which raises a reasonable doubt in the mind of the trier of fact, is introduced." *Id.* at 110, 595 P.2d at 1079. Reversing Brighter's conviction, this court ruled that

the giving of State's Requested Instruction No. 4 ... served to shift the burden of proof to [Brighter]. The instruction charged that proof of the underlying facts "is sufficient to prove the fact" of knowing possession, provided that no contrary evidence amounting to a reasonable doubt "is introduced." Although the instruction faithfully tracked the language of HRS § 701–117 ..., we are not fully convinced that the jurors could not have been misled into thinking that they were *required* to find the element of knowing possession in the absence of defense evidence amounting to a reasonable doubt. In view of our holding that only *permissive* inferences may arise under HRS § 701–117 ..., *State v. Dwyer, supra,* the jury should have been given a clarifying instruction to the effect that it *could*—but was not *required* to— find the element of knowing possession upon proof of the underlying facts.

Accordingly we hold the giving of State's Requested Instruction No. 4 without such a clarifying instruction so infected the entire trial that [Brighter's] resulting conviction does not comport with due process.

*Id.* at 111–12, 595 P.2d at 1079–80 (citation and some internal quotation marks omitted) (emphasis in original). *See also State v. Pimentel,* 61 Haw. 308, 603 P.2d 141 (1979) (defendant deprived of due process when trial court gave instruction that shifted to defendant burden of proving lack of knowledge that substance was heroin, with result that prosecution was not required to prove every element of offense of promoting dangerous drug in second degree beyond reasonable doubt; instruction likewise deficient for failing clearly to indicate that any inference that could have been drawn was merely permissive).

3. *Effect of the Hawaiʻi Rules of Evidence*

As we have indicated, in 1986 the legislature amended HRS § 701–117, *inter alia,* to provide that all provisions of the HPC purporting to establish "prima facie" evidence of particular offenses were to be governed by Hawaiʻi Rules of Evidence (HRE) Rule 306.[12]

12. *See supra* note 8.

HRE 306, entitled "presumptions in criminal proceedings," provides in relevant part:

(a) Presumptions against the accused.

(1) Scope. Except as otherwise provided by statute, in criminal proceedings, presumptions against an accused, recognized at common law or created by statute, including statutory provisions that certain facts are prima facie evidence of other facts or of guilt, are governed by this subsection.

(2) Submission to jury. When a presumed fact establishes an element of the offense or negatives a defense, the court may submit the presumption to the jury *only if a reasonable juror on the evidence as a whole, including the evidence of the basic facts, could find the presumed fact beyond a reasonable doubt.*

(3) Instructing the jury. The court may not direct the jury to find a presumed fact against the accused. Whenever a presumption against the accused is submitted to the jury, the court shall instruct the jury that, *if it finds the basic facts beyond a reasonable doubt, it may infer the presumed fact but is not required to do so.* In addition, *if the presumed fact establishes an element of the offense* or negatives a defense, the court shall instruct the jury that *its existence, on all the evidence, must be proved beyond a reasonable doubt.*

(Emphasis added.) Thus, HRE 306(a) applies equally to statutory and common law "presumptions against an accused." HRE 306(a)(1). Pursuant to HRS § 701-117, a fact is presumed if it is supported by "evidence which, if accepted in its entirety by the trier of fact, is sufficient to prove the fact."

Moreover, when a "presumed" fact establishes an element of a charged offense or negatives a defense thereto, its existence must be found beyond a reasonable doubt based "on the evidence as a whole." HRE 306(a)(2) and (3).

According to Professor Bowman,

[t]he upshot [of HRE 306(a) ] is that presumptions against accused [persons] are not presumptions at all in the rule 301 sense, but are rather a form of gently commended inference that has been held not to violate due process.[13] Accordingly, great care should be exercised in drafting and delivering jury instructions about presumptions. It is probably desirable to avoid altogether use of the word "presumption." Proper language for the instruction is found in rule 306(a)(3).

The use of commended inferences against accused [persons] presents yet another constitutional issue. By what standard should the trial court measure the connection between basic and presumed facts before submitting the presumption to the jury? The U.S. Supreme Court appears to have opted for a requirement of minimal relevancy: "A permissive inference violates the Due Process Clause only if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury." *Francis [v. Franklin],* 471 U.S. [307,] 314–15 [105 S.Ct. 1965, 1971, 85 L.Ed.2d 344] [ (1985) ] (dictum); *Ulster County Court v. Allen,* 442 U.S. [140,] 164–65 [99 S.Ct. 2213, 2228–29, 60 L.Ed.2d 777] [ (1979) ]. Since presumed facts are typically elements of the offense, the Supreme Court standard adds little or nothing to the general sufficiency requirement, nicely codified in rule 306(a)(2), that elemental find-

---

**13.** HRE 301 provides in relevant part:
   **Definitions.** The following definitions apply under this article:
   (1) "Presumption" is (A) a rebuttable assumption of fact, (B) that the law requires to be made, (C) from another fact or group of facts found or otherwise established in the action.
   (2) The following are not presumptions under this article:
   . . . .
   (B) Inference. The trier of fact may logically and reasonably make an assumption from

another fact or group of facts found or otherwise established in the action, but is not required to do so[.]

Were an HRE 306(a) "presumption against the accused" a presumption in the HRE 301(1) sense, then it would indeed impose upon a criminal defendant "a burden of persuasion of the nonexistence of an essential element" of a charged offense. *See Cuevas,* 53 Haw. at 113, 488 P.2d at 324.

ings be submitted to the jury for decision "only if a reasonable juror on the evidence as a whole, including the evidence of the basic facts, could find the presumed fact beyond a reasonable doubt." The [Hawai'i] Supreme Court has yet to decide whether it will impose additional requirements.[14]

A. Bowman, *Hawaii Rules of Evidence Manual* 62–63 (1990) (some citations omitted).

### 4. *Permissible inference as circumstantial evidence*

■ Particularly in light of the commentary on HRS § 701–117, *supra* at 268, 892 P.2d at 461, we agree with Professor Bowman that "presumptions against the accused," within the meaning of HRE 306(a), do not impose upon a defendant the burden of persuasion of the nonexistence of a material element of a charged offense, but "are rather a form of gently commended inference that has been held not to violate due process." Put differently, an HRE 306(a) presumption against the accused, whether recognized at common law or enacted by statute, *see* HRE 306(a)(1), merely creates a "permissible inference of fact" whereby the trier of fact "is permitted but not compelled to draw an inference of guilt from the circumstances which constitute a prima facie case" and retains the prerogative "to determine whether a reasonable doubt of guilt exists despite the permitted inference, whether or not the accused has offered any evidence." *See Dwyer*, 57 Haw. at 529, 560 P.2d at 112.

In any event, as a constitutional matter, an "inference of fact" is not "permissible" unless "there is a natural and rational evidentiary relation between the fact proven and the ... fact [inferred]." *Id.* And there can be no such natural and rational evidentiary relation " 'if the inference of one from proof of the other is arbitrary because of a lack of connection between the two in common experience.' " *Id.* at 530, 560 P.2d at 112–13 (quoting *Tot*, 319 U.S. at 467–68, 63 S.Ct. at 1245).

■ Viewed in this manner, it becomes apparent that HRE 306(a) "presumptions against the accused" are no more than legislatively or judicially enshrined and constitutionally circumscribed corollaries to the proposition, "well settled in this jurisdiction[,] that guilt may be proved beyond a reasonable doubt on the basis of reasonable *inferences* drawn from circumstantial evidence." *State v. Simpson*, 64 Haw. 363, 373 n. 7, 641 P.2d 320, 326 n. 7 (1982) (emphasis added). *See also State v. Bright*, 64 Haw. 226, 228, 638 P.2d 330, 332 (1981) (per curiam); *State v. O'Daniel*, 62 Haw. 518, 528–29, 616 P.2d 1383, 1391 (1980); *State v. Murphy*, 59 Haw. 1, 19, 575 P.2d 448, 460 (1978). Like a jury, "the trial court, as trier of fact, 'may draw all reasonable and legitimate *inferences and deductions* from the evidence adduced....' " *Batson*, 73 Haw. at 245–46, 831 P.2d at 930 (quoting *State v. Nelson*, 69 Haw. 461, 469, 748 P.2d 365, 370 (1987) (emphasis added)). And an inference is nothing more than "a logical and reasonable conclusion of the existence of a fact ... from the establishment of other facts[,] from which, by the process of logic and reason, and *based upon human experience*, the existence of the assumed fact may be concluded by the trier of fact." *State v. Emmsley*, 3 Haw.App. 459, 464–65, 652 P.2d 1148, 1153, *cert. denied*, 65 Haw. 683 (1982) (emphasis in original).

### 5. *Application of general principles to the present case*

■ As noted above, the ICA purported to apply a common law, albeit *ipse dixit*, presumption "that the person whose property was allegedly damaged would not consent to the violent destruction of the property[.]" *Pone*, slip op. at 2. According to the ICA, "until the defendant introduces evidence that ... consent was given, the [prosecution] is not required to show ... non-consent." *Id.* Thus, the ICA concluded that because Pone offered no evidence of consent,[15] the prosecu-

---

14. We perceive no need at this time to augment the general sufficiency requirement codified in HRE 306(a)(2).

15. As we have noted *supra* at 266–267, 892 P.2d at 459–460 the focus of the ICA's attention was on Townsend's tenant (whose consent or lack thereof was irrelevant), rather than on Townsend.

tion "was not required to prove otherwise." *Id.*

Lack of Townsend's consent to the damage to his front door was a material element of the offense with which Pone was charged. *See supra* at 266, 892 P.2d at 459.[16] Accordingly, the burden was upon the prosecution to prove the element beyond a reasonable doubt. *Cuevas,* 53 Haw. at 113, 488 P.2d at 324. As articulated by the ICA, however, the "presumption" of nonconsent imposed on Pone "a burden of persuasion of the nonexistence of an essential element of the crime" with which he was charged. *See id.* at 112–13, 488 P.2d at 324. So construed, the "presumption" would violate the due process clauses of the fourteenth amendment to the United States Constitution and article I, section 5 of the Hawai'i Constitution by virtue of improperly shifting the burden of proof to Pone. *Bumanglag,* 63 Haw. at 617–18, 634 P.2d at 94; *Pimentel, supra; Cuevas,* 53 Haw. at 114–15, 488 P.2d at 325; *In re Winship,* 397 U.S. at 364, 90 S.Ct. at 1072. The ICA therefore erred in its characterization of the "presumption."

■ At most, the proposition that a "person whose property was allegedly damaged would not consent to the violent destruction of the property" is a "permissible inference of fact," which the trier of fact is permitted, but not compelled, to draw from common experience and the evidence as a whole, and which need not eliminate reasonable doubt of guilt. *See Pimentel, supra; Brighter,* 61 Haw. at 111–12, 595 P.2d at 1079–80; *Dwyer,* 57 Haw. at 529–30, 560 P.2d at 112–13; HRE 306(a). Put simply, lack of consent to the violent destruction of a person's property *may* be proved circumstantially on the basis of logical and reasonable inferences drawn from the evidence adduced and common human experience. *Batson,* 73 Haw. at 245–46, 831 P.2d at 930; *Simpson,* 64 Haw. at 373 n. 7, 641 P.2d at 326 n. 7; *Bright,* 64 Haw. at 228, 638 P.2d at 332; *O'Daniel,* 62 Haw. at 528–29, 616 P.2d at 1391; *Murphy,* 59 Haw. at 19, 575 P.2d at 460; *Emmsley,* 3 Haw. App. at 464–65, 652 P.2d at 1153.

## C. Denial Of Motion For Judgment Of Acquittal And Sufficiency Of The Evidence

■ Notwithstanding the foregoing, we agree with the ICA that "the trial judge did not err either in denying the motion for judgment of acquittal or in finding [Pone] guilty." *Pone,* slip op. at 3.

Viewing the trial record in the light most favorable to the prosecution, a reasonable trier of fact could fairly conclude beyond a reasonable doubt that the prosecution had proved that Pone intentionally damaged the front door to Townsend's apartment without Townsend's consent. Accordingly, the trial court committed no error in denying Pone's motion for judgment of acquittal. *Alston,* 75 Haw. at 528, 865 P.2d at 164.

Moreover, Pone's conviction was supported by substantial evidence. Accordingly, the trial court committed no error in convicting Pone of criminal property damage in the fourth degree. *Reed,* 77 Hawai'i at 81–82, 881 P.2d at 1227–28; *In re John Doe, Born on January 5, 1976,* 76 Hawai'i at 92–93, 869 P.2d at 1311–12; *Silva,* 75 Haw. at 432, 864 P.2d at 589–90; *Batson,* 73 Haw. at 248–49, 831 P.2d at 931.

## IV. CONCLUSION

For the foregoing reasons, and despite the ICA's mistaken invocation of an evidentiary "presumption" that would improperly shift the prosecution's burden of proof to the defendant in a criminal case, the ICA's judgment affirming the district court's judgment of conviction is affirmed.

---

16. Ironically, the only element of the offense of criminal property damage in the fourth degree as to which the prosecution produced direct evidence was that of Townsend's nonconsent.