**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-19-0000331**
**27-MAY-2021**
**07:47 AM**
**Dkt. 56 SO**

NO. CAAP-19-0000331

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


STATE OF HAWAIʻI, Plaintiff-Appellee, v.
MARCILINO ALDAYA, Defendant-Appellant


APPEAL FROM THE DISTRICT COURT OF THE THIRD CIRCUIT
(KONA DIVISION)
(CASE NO. 3DCW-19-0000427)


SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, Hiraoka and Wadsworth, JJ.)

The State of Hawaiʻi (**State**) charged Defendant-Appellant Marcilino Aldaya (**Aldaya**) with disorderly conduct as a petty misdemeanor offense, in violation of Hawaii Revised Statutes (**HRS**) § 711-1101(1)(c) and (3) (2014).[1] After a bench

---

[1] HRS § 711-1101(1)(c) and (3) provides:

(1) A person commits the offense of disorderly conduct if, with intent to cause physical inconvenience or alarm by a member or members of the public, or recklessly creating a risk thereof, the person:

. . .

(c) Subjects another person to offensively coarse behavior or abusive language which is likely to provoke a violent response[.]

. . .

(continued...)

trial, the District Court of the Third Circuit, Kona Division, (**District Court**)[2/] found Aldaya guilty as charged.

Aldaya appeals from the District Court's Amended Judgment and Notice of Entry of Judgment that was filed on April 8, 2019. On appeal, Aldaya argues that the State failed to present sufficient evidence to prove that he committed disorderly conduct under HRS § 711-1101(1)(c). He further argues that the State failed to present sufficient evidence to enhance the charged HRS § 711-1101(1)(c) offense from a violation to a petty misdemeanor pursuant to HRS § 711-1101(3).

As explained below, we conclude that the State failed to present sufficient evidence to prove that Aldaya committed disorderly conduct under HRS § 711-1101(1)(c). We therefore need not address Aldaya's claim that there was insufficient evidence to enhance the charge to a petty misdemeanor. We reverse Aldaya's conviction and the District Court's Amended Judgment.

DISCUSSION

I.

HRS § 711-1101(1)(c) requires proof that the defendant "subject[ed] another person to offensively coarse behavior or abusive language which is likely to provoke a violent response." In light of the First Amendment implications of punishing speech,

---

[1/] (...continued)
(3)  Disorderly conduct is a petty misdemeanor if it is the defendant's intention to cause substantial harm or serious inconvenience, or if the defendant persists in disorderly conduct after reasonable warning or request to desist. Otherwise disorderly conduct is a violation.

[2/]  The Honorable Margaret Masunaga presided.

we construe the "likely to provoke a violent response" restriction as applying to both the "offensively coarse behavior" and "abusive language" provisions of HRS § 711-1101(1)(c).  This interpretation is consistent with State v. Jendrusch, 58 Haw. 279, 567 P.2d 1242 (1977), where the Hawaiʻi Supreme Court, in discussing the type of conduct proscribed by HRS § 711-1101(1)(c), stated:  "Speech may be punishable only if, within the meaning of the statute, it is 'likely to provoke a violent response.'"  Id. at 282, 567 P.2d 1245;[3/] see also, State v. Faulkner, 64 Haw. 101, 105, 637 P.2d 770, 774 (1981) ("Coarse and obscene language directed at a member of the public, which is likely to provoke a violent response, may also furnish the basis for a charge under HRS § 711-1101(1)(c).").  It is also consistent with decisions of the United States Supreme Court and other courts that either have struck down statutes prohibiting the use of "offensively coarse" utterances or similar conduct on First Amendment overbreadth grounds, or have narrowly construed

---

[3/]     At the time relevant to the Jendrusch decision, HRS § 711-1101(1)(c) provided:

> (1)  A person commits the offense of disorderly conduct if, with intent to cause physical inconvenience or alarm by a member or members of the public, or recklessly creating a risk thereof, he:

> . . .

> (c)  Makes any offensively coarse utterance, gesture, or display, or addresses abusive language to any person present, which is likely to provoke a violent response[.]

Jendrusch, 58 Haw. at 280, 567 P.2d at 1243.

such statutes to prohibit only the "fighting words" category[4] of unprotected speech to avoid First Amendment concerns. E.g., Gooding v. Wilson, 405 U.S. 518, 519-20 (1972) (invalidating statute as facially unconstitutional); Johnson v. Campbell, 332 F.3d 199, 211-12 (3rd Cir. 2003) (concluding that Delaware has construed its disorderly conduct statute as prohibiting only "fighting words"); State v. Hoffman, 387 N.E.2d 239, 242 (Ohio 1979) (narrowing statute to only prohibit "fighting words."); Hansen v. People, 548 P.2d 1278, 1280 (Col. 1976) (invalidating statute as facially overbroad).

II.

We conclude that the State failed to present sufficient evidence to show that Aldaya "subject[ed] another person to offensively coarse behavior or abusive language which [was] likely to provoke a violent response." In reviewing a challenge to the sufficiency of evidence, we must view the evidence in the light most favorable to the State. State v. Ildefonso, 72 Haw. 573, 576, 827 P.2d 648, 651 (1992). "The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact." State v. Richie, 88 Hawaiʻi 19, 33, 960 P.2d 1227, 1241 (1998) (citation omitted). Substantial evidence is "credible evidence which is of sufficient quality and

---

[4] In Chaplinsky v. New Hampshire, 315 U.S. 568, 572 (1942), the United States Supreme Court described the "fighting words" category of unprotected speech as "those [words] which by their very utterance inflict injury or tend to incite an immediate breach of the peace."

probative value to enable a person of reasonable caution to support a conclusion." State v. Pone, 78 Hawaiʻi 262, 265, 892 P.2d 455, 458 (1995) (brackets and citation omitted).

The backdrop for Aldaya's disorderly conduct charge was a Kona event in which Aliʻi Drive was closed to permit vendors to set up tents to sell items, with hundreds of people walking the streets. During this event, Hawaiʻi County Police Officers Kamuela Akana and Shawn Mirafuentes were on patrol together, and they encountered Aldaya on two separate occasions. The State called Officers Akana and Mirafuentes as witnesses at trial, and their testimony was the only evidence presented. Officers Akana and Mirafuentes did not testify to observing any disruptive behavior on Aldaya's part during the first encounter, and Aldaya's actions during this encounter did not provide any basis for establishing disorderly conduct under HRS § 711-1101(1)(c).

With respect to the second encounter, the State presented the officers' testimonies that they observed Aldaya lying on a wall, loudly "yelling obscenities, vulgarness, swearing and stuff like that," "throwing his hands all over the place, kicking, . . . [and] just causing a disturbance to the public." This was the extent of the detail provided by the State on Aldaya's language and behavior pertinent to his disorderly conduct charge.

However, in order for a trier of fact to determine whether Aldaya's words and actions subjected another person to "offensively coarse behavior or abusive language which is likely

to provoke a violent response," the State was required to provide some substantial details or particulars regarding Aldaya's words and actions.  This the State failed to do.  Aside from Officer Akana's non-specific characterizations of Aldaya's words as "obscenities, vulgarness, swearing and stuff like that," the State did not present evidence of the words that Aldaya actually used or the substance of what he was saying.[5/]  Without more detail about the words Aldaya spoke, it is difficult to see how the State could demonstrate that what Aldaya said constituted "offensively coarse behavior" or "abusive language."  The State also did not present any clarifying or explanatory details regarding Aldaya's actions of "throwing his hands all over the place [and] kicking," such as whether Aldaya's actions were directed at anyone, were done in a confrontational manner, or came close to making physical contact with anyone.

Moreover, the reaction of the person or persons purportedly subjected to Aldaya's conduct is relevant to whether such conduct was "likely to provoke a violent response." Although Officer Akana testified that Aldaya was "yelling at another male party,"[6/] the State failed to present relevant details regarding that male party's reaction to Aldaya's

---

[5/]     Officer Mirafuentes testified that Aldaya was "blurting out stuff," but Officer Mirafuentes could not remember what Aldaya was saying.

[6/]     In contrast to Officer Akana, Officer Mirafuentes testified that he did not think that Aldaya "was talking to any one person," but rather thought that Aldaya was "just talking out loud."  Officer Mirafuentes testified that while Aldaya was next to someone, Aldaya "didn't have any eye contact with [that] person."

yelling.[7]  As to the reaction of other members of the public, Officer Akana testified that people walking in the area "were like trying to go around," had a "visible reaction," and "looked pretty disturbed by what was happening."  Officer Mirafuentes testified that the "facial expressions [of members of the public] seemed concerning," and he could hear people say, "'What is this guy doing?'"  However, evidence that people were "trying to go around," "looked pretty disturbed," "seemed concern[ed]," or questioned what Aldaya was doing does not demonstrate that Aldaya's words and actions were likely to provoke a violent response.  This is especially true given the lack of detail in the State's evidence regarding Aldaya's words and actions.  We conclude that the evidence presented, even when viewed in the light most favorable to the State, was not "of sufficient quality and probative value to enable a person of reasonable caution" to conclude that Aldaya subjected another person to "offensively coarse behavior or abusive language which [was] likely to provoke a violent response."  See Pone, 78 Hawai‘i at 265, 892 P.2d at 458.

We note that Officers Akana and Mirafuentes testified that after they admonished Aldaya about his behavior during the

---

[7]     Officer Akana testified that he told Aldaya that the officers were contacting him again because "we're getting another call, disturbing behavior.  You guys are yelling and just, you know, swearing and, you know, cursing and everything."  It is not clear whether Officer Akana's reference to "[y]ou guys are yelling[,] . . . swearing[,] . . . [and] cursing" is what he heard in the call from dispatch or is what he personally observed.  Even if Officer Akana was referring to what he personally observed, he did not provide details on the other "guy's" demeanor or the substance of what that person was saying.

second encounter, Aldaya directed his attention at the officers and began arguing with them. The officers testified that Aldaya swore at them and challenged the officers to arrest him, and that Aldaya was then placed under arrest. The officers' testimony included details of the words used by Aldaya in arguing with them.[8]

However, HRS § 711-1101(1)(c) requires proof that the defendant acted "with intent to cause physical inconvenience or alarm by <u>a member or members of the public</u>, or recklessly creating a risk thereof." (Emphasis added). The Commentary to HRS § 711-1101 and relevant Hawaiʻi case law makes clear that as a general rule, police officers are not considered "members of the public" for purposes of the disorderly conduct statute. Commentary to HRS § 711-1101;[9] <u>State v. Leung</u>, 79 Hawaiʻi 538, 542-45, 904 P.2d 552, 556-59 (App. 1995) ("Arguments with the police, without more, do not fall within the ambit of the disorderly conduct statute[.]"); <u>State v. Nakasone</u>, 1 Haw. App.

---

[8] Officer Akana testified that Aldaya told the officers, "Ef you guys . . . I'm not . . . afraid to go to jail . . . stop bothering me . . . I'm not scared . . . Effin arrest me." Officer Mirafuentes testified that Aldaya said, "Fuck you guys. Uh, I no need move. Arrest me if you guys like."

[9] The Commentary to HRS § 711-1101 provides in relevant part:

> A person may not be arrested for disorderly conduct as a result of activity which annoys only the police . . . . Police officers are trained and employed to bear the burden of hazardous situations, and it is not infrequent that private citizens have arguments with them. Short of conduct which causes "physical inconvenience or alarm to a member or members of the public" arguments with the police are merely hazards of the trade, which do not warrant criminal penalties.

(Footnote omitted).

10, 11-12, 612 P.2d 123, 124-25 (1980) (concluding that evidence that the defendant argued with a police officer was insufficient to prove disorderly conduct). We conclude that Aldaya's conduct in arguing with the officers did not provide a basis for the HRS § 711-1101(1)(c) charge. See id.

CONCLUSION

Based on the foregoing analysis, we reverse the District Court's April 8, 2019 Amended Judgment.

DATED: Honolulu, Hawaiʻi, May 27, 2021.

On the briefs:

Jon N. Ikenaga,
Deputy Public Defender,
for Defendant-Appellant.

Sara B. Vargas,
Deputy Prosecuting Attorney,
County of Hawaiʻi,
for Plaintiff-Appellee.

/s/ Katherine G. Leonard
Presiding Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge