STATE OF HAWAII, Plaintiff-Appellee, *v.*
DANIEL LOPES CUEVAS, also known as
Danny Kaopuiki, Defendant-Appellant

No. 4982

August 27, 1971

RICHARDSON, C.J., MARUMOTO, ABE, LEVINSON,
JJ., AND CIRCUIT JUDGE M. DOI IN PLACE
OF KOBAYASHI, J., DISQUALIFIED

OPINION OF THE COURT BY MARUMOTO, J.

Defendant was tried by a jury in the first circuit court upon an indictment charging him with the commission of first degree murder in violation of HRS § 748-1 for the killing of Sueo Yoshikawa with deliberate premeditated malice aforethought and without authority, justification, or extenuation by law.

The jury returned a verdict of guilty in the second degree. Under HRS § 748-2, second degree murder involves the element of malice aforethought but not the element of deliberate premeditation.

The court entered a judgment in accordance with the verdict, and sentenced defendant to imprisonment for a period not to exceed 40 years. The case is here on appeal from that judgment.

On the appeal, defendant has specified seven errors. Only one has merit. It relates to the giving of the following instruction to the jury:

"When the act of killing another is proved, malice aforethought shall be presumed, and the burden shall rest upon the party who committed the killing to show that it did not exist, or a legal justification or extenuation .therefor."

The instruction repeated verbatim the language of HRS § 748-3, which will hereafter be referred to as the statute or the statute in question.

At issue is whether the statute is valid. The statute is discussed in a number of prior decisions of this court, but in none is there a discussion of its validity.

The statute was enacted by the House of Nobles and Representatives of the Hawaiian Islands assembled in Legislative Council, on June 21, 1850, as a part of the Penal Code of

1850, being section 4, of chapter VII, of that code. It has remained unchanged to this date, although in the intervening 121 years, the concept with regard to the rights of persons charged with criminal offenses has undergone material changes. Goldstein, *The State and the Accused: Balance of Advantage in Criminal Procedure*, 69 Yale L.J. 1149, 1153 (1960).

The Penal Code of 1850 was drafted by Chief Justice Lee. In submitting the draft to the Legislative Council, Lee stated: "In this chrysalis state of the nation, I have thought it proper to keep an eye to the future as well as to the present. Accordingly, while I have studied, as far as is consonant with justice, to conform to the ancient laws and usages of the kingdom, I have in the main, adopted the principles of the English common law, as the foundation of a code best adapted to the present and approaching wants and condition of the nation."

In Lee's time, based upon a statement in Sir Michael Foster's Crown Law, p. 255 (1762), the common law was generally understood as imposing upon the person accused of murder the burden of establishing the absence of malice aforethought, once the killing by him was proved.

Foster's statement was as follows: "In every charge of murder, the fact of killing being first proved, all the circumstances of accident, necessity, or infirmity are to be satisfactorily proved by the prisoner, unless they arise out of the evidence produced against him; for the law presumeth the fact to have been founded in malice, until the contrary appeareth."

Blackstone cited Foster in stating that "all homicide is presumed to be malicious until the contrary appeareth upon evidence." 4 Blackstone's Commentaries 201.

Thus, it is obvious that in the statute in question, Lee stated a proposition which he considered to be an established principle of the common law.

Under the language of the statute, the burden imposed upon the accused is not merely a burden of going forward

with the evidence or of raising a reasonable doubt, but is a burden of persuasion of the nonexistence of an essential element of the crime of murder.

This court so construed the statute in *Territory v. Fukunaga*, 30 Haw. 697, 724 (1929), where it stated that upon proof of the fact of killing, "it was the duty of the jury and of the court to presume malice aforethought and the burden rested upon the defendant to show that malice did not exist or a legal justification or extenuation therefor."

Earlier, in *Territory v. Buick*, 27 Haw. 28, 57 (1923), this court stated that, under the statute, "it was compulsory upon the jury, if it believed that the defendant did the shooting, to find that the killing was with malice aforethought and that the offense was murder."

The statements quoted above correctly construed the intent and meaning of the statute. But they were made on the assumption that the statute was valid. In our opinion, that assumption was wrong.

We hold that the statute is invalid. Under our legal system, the burden is always upon the prosecution to establish every element of crime by proof beyond a reasonable doubt, never upon the accused to disprove the existence of any necessary element.

Thus, it is stated in *Davis v. United States*, 160 U.S. 469, 487 (1895), that "the burden of proof, as those words are understood in criminal law, is never upon the accused to establish his innocence or to disprove the facts necessary to establish the crime for which he is indicted. It is on the prosecution from the beginning to the end of the trial and applies to every element necessary to constitute the crime." A similar statement appears in *Christoffel v. United States*, 338 U.S. 84, 89 (1949).

The same principle holds true in England. In *Woolmington v. The Director of Public Prosecutions*, [1935] A.C. 462, 481 (H.L.), it is stated that "while the prosecution must prove the guilt of the prisoner, there is no such burden laid on the prisoner to prove his innocence and it is sufficient for

him to raise a doubt as to his guilt; he is not bound to satisfy the jury of his innocence." The opinion in the case was written by Viscount Sankey, L.C., who, upon an exhaustive review of history and precedents, construed Foster's statement to mean merely that "if it is proved that the conscious act of the prisoner killed a man and nothing else appears in the case, there is evidence upon which the jury may, not must, find him guilty of murder," and further stated:

"* * * It must be remembered that Sir Michael Foster, although a distinguished judge, is for this purpose to be regarded as a text-book writer, for he did not lay down the doctrine in any case before him, but in an article which is described as the 'Introduction to the Discourse of Homicide.' * * *

\* \* \* \*

"The question arises, Is that statement correct law? Is it correct to say, and does Sir Michael Foster mean to lay down, that there may arise in the course of a criminal trial a situation at which it is incumbent upon the accused to prove his innocence? To begin with, if that is what Sir Michael Foster meant, there is no previous authority for his proposition, and I am confirmed in this opinion by the fact that in all the text-books no earlier authority is cited for it. * * *

\* \* \* \*

"If at any period of a trial it was permissible for the judge to rule that the prosecution had established its case and that the onus was shifted on the prisoner to prove that he was not guilty and that unless he discharged that onus the prosecution was entitled to succeed, it would be enabling the judge in such a case to say that the jury must in law find the prisoner guilty and so make the judge decide the case and not the jury, which is not the common law."

The right of an accused to be convicted only upon proof

by the prosecution of all of the elements of the crime charged against him beyond a reasonable doubt is a constitutionally protected right.

It is stated in *In re Winship*, 397 U.S. 358, 364 (1970): "Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."

The statute being constitutionally invalid, the circuit court erred in instructing the jury in the statutory language. But the question remains whether such error calls for automatic reversal of the judgment.

The prosecution contends that the instruction was harmless in the context of the entire charge to the jury, which included an instruction regarding the presumption of innocence of the accused and an instruction regarding the burden of proof resting upon the prosecution.

In *Chapman v. California*, 386 U.S. 18, 22 (1966), it is stated that "there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring automatic reversal of the conviction."

But *Chapman* also recognizes that there are some constitutional rights so substantial, and so basic to a fair trial, that their infraction can never be treated as harmless error.

With reference to constitutional errors not requiring automatic reversal, *Chapman* lays down the rule that before holding such error to be harmless, "the court must be able to declare a belief that it was harmless beyond a reasonable doubt."

In this connection, mention may also be made of the test in *Fahy v. Connecticut*, 375 U.S. 85, 86 (1963), which bases the determination of the prejudicial effect of a trial error on

whether there was a reasonable possibility that the error might have contributed to the conviction.

We do not think that an instruction to a jury in a murder case couched in the language of the statute in question can ever be harmless. The error is neither unimportant nor insignificant; it infringes upon a basic right of the accused; it raises a reasonable possibility that it might have contributed to the conviction; and we cannot say that it was harmless beyond a reasonable doubt.

Reversed.

*D. Barclay Bryan* for defendant-appellant.

*Barry Chung,* Prosecuting Attorney, for plaintiff-appellee.

### CONCURRING & DISSENTING OPINION OF LEVINSON, J.

I concur in the opinion of the court except the statement that only one of the seven errors specified by the defendant has merit. I think that a second specification of error relating to the police station identifications also has merit and I dissent from the contrary holding of this court.

One of the witnesses at the trial was Sei Nakata. Mr. Nakata had been asked to identify the defendant at the police station at a time when the defendant was alone in a room, not part of a lineup, and not represented by counsel. "The practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned." *Stovall v. Denno,* 388 U.S. 293, 302 (1967); *Foster v. California,* 394 U.S. 440, 443 (1969). As elicited through his testimony, the basis for his identification was as follows:

Q. And at that time, you had doubts?

A. Little doubt.

Q. Now, why don't you no doubt then?

A. Because nobody, police caught nobody by this description.

Q. So the reason that you are saying now that it's him,

if I understand you correctly, is because he is the one that the police apprehended?

A. Yes, and I asked the detective there if he is left handed and they told me he is left handed.

\* \* \* \*

Q. Isn't it true, Mr. Nakata, that when you went in and they showed you this boy here, he was alone, wasn't he?
A. Yes.

Q. They didn't give you a line up?
A. No.

Q. They didn't put anybody else next to him?
A. No.

Q. And the police came and said I want you to identify the boy that we caught?
A. Yes.

Q. And they told you that this was the man that they had arrested for the murder?
A. Yes.

Q. And so you figured they had picked the right man?
A. Yes, because when they said he is left handed, I think, and fit my description. I said he is the one.

\* \* \* \*

Q. So actually even before you saw this boy in the police station you had a pretty good idea he was the one that did it from what the police told you?
A. I think so, yes.

\* \* \* \*

Q. You knew that Danny was going to be here when you came to testify?
A. Oh, yes.

\* \* \* \*

Q. You knew this was the boy that was charged?
A. Yes.

Q. In this crime?
A. Yes.

Q. And so you knew that this was the one that you saw?
A. Yes.
Q. Because he is the one that is charged?
A. Yes.

\* \* \* \*

Q. Based on what the police told you when they took you down to the police station, you know that they were going to show you the person who committed this crime?
A. Yes.
Q. And when you came in here you also knew you were going to see the same person?
A. Yes.
Q. And this is on what you base you[r] identification? That's correct?
A. I believe so.

As Mr. Justice Douglas wrote in his dissenting opinion in *Biggers v. Tennessee*, 390 U.S. 404, 406 (1968):

> *Stovall v. Denno*, 388 U.S. 293, and *Simmons v. United States, ante*, p. 377, make it clear, however, that independent of any right to counsel claim, a procedure of identification may be "so unnecessarily suggestive and conducive to irreparable mistaken identification" that due process of law is denied when evidence of the identification is used at trial. *Stovall v. Denno, supra*, at 302.

I think that the police station identification of the defendant by Mr. Nakata was so unnecessarily suggestive and conducive to irreparable mistaken identification that due process of law was denied when evidence of such identification was used at the trial.

Another witness called by the State to identify the defendant was Faith Lee. Mrs. Lee was asked by the police to go to the police station and was shown the defendant who was alone in "one of the booths" with a police officer. She then listened to a voice test in which five separate voices said "I got 'em, I got 'em". She identified the defendant and his voice.

This voice test was given at approximately 5:30 p.m. after the defendant had been in police custody since 6:00 or 6:30 in the morning and when he was not represented by counsel. All of the participants in the voice test except the defendant, who was 17 years of age, were on-duty police officers. The eleven hours that elapsed between the time when the defendant was taken into police custody and the time when the voice test was given provided more than sufficient time for the police to arrange for the participation of other juveniles. Mrs. Lee knew that the suspect was a juvenile. Asking her to pick the only juvenile voice out of a test whose participants were four adults and one juvenile does not present a fair test and is certainly suggestive. This procedure so undermined the reliability of the eye witness identification as to violate due process. *Foster v. California,* 394 U.S. 440, 443 (1969). I am satisfied that this is so, under the "totality of the surrounding circumstances" test stated in Mr. Justice Brennan's opinion in *Coleman v. Alabama,* 399 U.S. 1, 4 (1970).