965 P.2d 149

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**James MITCHELL, aka Dennis Thomas, Defendant–Appellant,**

and

**Michael Chambers, Defendant.**

**No. 20186.**

Intermediate Court of Appeals of Hawai'i.

Sept. 1, 1998.

---

Dwight C.H. Lum, Honolulu, on the briefs, for defendant-appellant.

James M. Anderson, Deputy Prosecuting Attorney, City and County of Honolulu, on the brief, for plaintiff-appellee.

Before BURNS, C.J., and WATANABE and KIRIMITSU, JJ.

KIRIMITSU, Judge.

The instant case[1] presents the issue of how a trial court should submit the statutory

---

1. This court originally issued a slip opinion for the instant case on January 16, 1998 in which we determined that insufficient evidence existed to convict Defendant–Appellant James Mitchell, also known as Dennis Thomas (Mitchell), of theft in the second degree, in violation of Hawai'i Revised Statutes (HRS) § 708–831(1)(b) (1993). *State v. Mitchell*, No. 20186, slip op. (Haw.App. Jan. 16, 1998). We accordingly vacated the judgment of the circuit court and remanded the case for entry of a new judgment convicting Mitchell of the lesser-included-offense of theft in the fourth degree, a violation of HRS § 708–833 (1993). *See id.* A petition for certiorari was filed by Plaintiff-Appellee State of Hawai'i (the State). The Hawai'i Supreme Court granted the petition and, on June 9, 1998, reversed our slip opinion by memorandum opinion. *State v.*

presumption contained in Hawai'i Revised Statutes (HRS) § 708–801(4) (1993), *see infra* n. 9, to the jury without violating a defendant's right to due process of law. We hold that, pursuant to Hawai'i Rules of Evidence (HRE) Rule 306 and relevant case law, a trial court must advise a jury that the statutory presumption contained in HRS § 708–801(4) is a permissive inference of fact and thus not binding upon the jury as factfinders, otherwise the defendant's due process rights are violated.

## I. INTRODUCTION

Defendant–Appellant James Mitchell, also known as Dennis Thomas (Mitchell), appeals the First Circuit Court's September 13, 1996 final judgment (judgment) affirming the jury's verdict finding him guilty of theft in the second degree, pursuant to HRS § 708–831 (1993). On appeal, Mitchell asserts that the circuit court committed six reversible errors.[2] We address only the issue of whether the circuit court's jury instruction in regards to HRS § 708–801(4) was proper. Because we hold that the court's jury instruction violated Mitchell's right to due process of law, we vacate the circuit court's judgment and remand for a new trial.

As advice to the parties, we also address · the issue of whether the circuit court's denial of Mitchell's motions to dismiss, as discussed below, was proper. We conclude that the

circuit court did not clearly err in finding that the evidence at issue had not been tampered with, and thus denying Mitchell's motions to dismiss.

## II. BACKGROUND

The facts are undisputed that on the evening of September 2, 1995, Mitchell, assisted by Michael Chambers (Chambers),[3] climbed the fence of Ted's Wiring Service, owned and operated by Ted Terayama (Terayama), and stole two metal telephone poles and an uncertain amount of electrical wiring, allegedly with the intent to recycle them for cash.

Honolulu Police Department Officer Albert Somera (Officer Somera) witnessed Mitchell committing the theft. Before Mitchell left the crime scene, Officer Somera and another officer, Officer Nihipali, detained and arrested Mitchell and Chambers.

On September 13, 1995, the State of Hawai'i (the State) filed a complaint charging Mitchell and Chambers with theft in the second degree pursuant to HRS § 708–831(1)(b).[4]

On December 26, 1995, Mitchell filed a Motion to Dismiss Complaint for Violation of Discovery Order or in the Alternative for Sanctions (motion to dismiss), arguing that the State had not preserved the evidence

---

*Mitchell*, No. 20186, memo. op. (Haw. June 9, 1998). Mitchell filed a motion for reconsideration to the supreme court, asking that if the supreme court did not reconsider its opinion, that it remand the case to the Intermediate Court of Appeals (ICA) for a full determination of the remaining points of error "raised by [Mitchell] and not addressed by the ICA." The supreme court granted the motion and remanded the case to this court to address the remaining points of error.

2. Mitchell argued in his opening brief that the circuit court erred by: (1) entering its March 7, 1996 Findings and Order Denying Defendants' Motion to Dismiss Complaint for Violation of Discovery Order or, in the Alternative, for Sanctions, and later denial of Mitchell's renewed motion, because (a) the State tampered with material evidence, and (b) the order denied Mitchell due process; (2) not allowing Mitchell's valuation expert, Joel Fox, to testify at a pre-trial motions hearing; (3) entering judgment in favor of the State because no substantial evidence sup-

ported the jury's verdict in regards to the value of items stolen; (4) failing to dismiss three jurors for cause; (5) not granting Mitchell's motion for a new trial due to the State prosecutor's misconduct; and (6) submitting to the jury erroneous jury instructions.

3. The police also arrested Michael Chambers (Chambers), who was found guilty of theft in the second degree. Chambers is not a party on appeal.

4. HRS § 708–831(1)(b)–(2) (1993) provides, in pertinent part:

**Theft in the second degree.** (1) A person commits the offense of theft in the second degree if the person commits theft:

. . . .

(b) Of property or services the value of which exceeds $300;

. . . .

(2) Theft in the second degree is a class C felony.

because the wires and poles had been tampered with, allegedly because:

[ (1) ] On September 28, 1995, Mr. Mitchell's lawyer accompanied Michael Chambers and his lawyer, Paul Cunney, and Chae Wan Chun to Ted's Wiring Service to inspect the items. They were met by Mr. Randall Terayama of Ted's Wiring and were taken to the back of the building. They were shown what were supposedly the two aluminum poles and wiring that were recovered by the police. Photographs were taken at that time. After the inspection, Mr. Chambers expressed his belief that those did not appear to be the same poles and wiring that were found in the truck. There also appeared to be more pieces of wiring than before.

[ (2) ] On October 3, 1995, an electrician named Joel Fox went to Ted's Wiring Service at the request of defense counsel to look at the materials. His measurements of the wires and descriptions of types of wire differed significantly from the descriptions given in the list that Thomas Terayama gave to the police on September 2.

[ (3) ] ... A comparison of the polaroid enlargement [of the police photographs taken of the evidence on September 2] confirms a wide disparity from the material that was actually shown to defense counsel on September 28, 1995 and of Mr. Fox on October 3.

At the hearing on the motion to dismiss, Terayama testified that after receiving the court's instruction to preserve the evidence, he placed the wires and telephone poles in a separate bin at the back of the store and told his employees not to disturb it. On cross-examination, however, Terayama testified that some pieces of wiring seen in the polaroid photograph of the evidence taken by the police were missing.

Chambers testified that when he saw the evidence on September 28:

A. I noticed that there was new wire added, new six to eight foot strands that was brand new. This was taken out from the bin by the fence right here where we were arrested from his used scrap box of wire.

There was all kinds of articles that I'd never seen before that was added to the— to this piece of evidence here[.]

Chambers also testified that the telephone poles looked different. Mitchell renewed his motion to dismiss at the close of trial.

In its Findings and Order Denying Defendants' Motion to Dismiss Complaint for Violation of Discovery Order or, in the Alternative, for Sanctions, the circuit court stated:

1. It is unclear (a) whether the District Court Judge at the preliminary hearing had the power to make his initial "order" regarding the subject stolen property, and it is further unclear (b) whether an "order" was actually made.

2. Even assuming that an "order" was made, the Court finds that the defendants have failed to prove any "tampering" of the evidence by the complainant and/or his agents.

3. The other issues raised by defense counsel are more appropriately trial issues to be raised at the time of trial before the trial judge.

Trial commenced on July 8, 1996. At trial, the circuit court instructed the jury on the offenses of theft in the second, third, and fourth degrees, each of which includes as a material element of the offense that the defendant intended to deprive the victim of a requisite value of his or her property. The court further instructed the jury that, in regards to HRS § 708–801(4):

When acting intentionally or knowingly with respect to the value of property is required to establish an element of an offense, the value of the property shall be prima facie evidence that a defendant believed or knew the property to be of that value. However, if a defendant believed that the valuation of the property was less than that value, the charged offense shall be reduced to a class or grade consistent with the defendant's state of mind.

Mitchell's attorney objected to this instruction, arguing:

MR. LUM [ (Mitchell's attorney) ]: ... Our objection is as to the section of the instruction concerning the prima facie evi-

dence regarding the value of the property. Under Hawai'i Rules of Evidence, Rule 306–A [sic], about presumption against the accused. *Whenever presumption against the accused is submitted to the jury, the Court shall instruct the jury that if it finds the basic facts beyond a reasonable doubt it may infer presumed fact [sic], but it is not required to do so.*

We do not believe that the instruction makes it clear, and, therefore, the jury should not be instructed to take it as prima facie evidence. And we would be requesting that the Court give defendant's requested jury instruction number 8 instead.[5]

....

THE COURT: ... Court—defendant's requested number 8 will be refused over objections of the defendants.

(Footnote and emphasis added.)

The jury found Mitchell guilty of second degree theft. In its judgment entered upon the jury's verdict, the circuit court fined Mitchell $250, sentenced him to five years of probation and seven months in jail. Mitchell's notice of appeal was timely filed on October 11, 1996.

## III. *DISCUSSION*

### A. *Standard of review.*

The dispositive issue we review on appeal is whether the circuit court's instructions to the jury were proper.

When jury instructions or the omission thereof are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading.

---

**5.** Mitchell's requested jury instruction number 8 read:

Whenever the value of property or services is determinative of the class or grade of an offense, or otherwise relevant to a prosecution, the following shall apply:

When acting intentionally or knowingly with respect to the value of property or services is required to establish an element of an offense, it is a defense which reduces the class or grade of offense consistent with the defendant's state of mind, that the defendant believed the valuation of the property or services to be less.

Erroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial.

Error is not to be viewed in isolation and considered purely in the abstract. It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled. In that context, the real question becomes whether there is a reasonable possibility that error might have contributed to conviction.

*State v. Cullen,* 86 Hawai'i 1, 8, 946 P.2d 955, 962 (1997) (brackets, quotation marks, and citations omitted).

While we review jury instructions as a whole to determine whether they are prejudicially insufficient, erroneous, inconsistent, or misleading, "[w]e answer questions of constitutional law by exercising our own independent judgment based on the facts of the case. Thus, we review questions of constitutional law under the right/wrong standard." *State v. Quitog,* 85 Hawai'i 128, 139, 938 P.2d 559, 570 (1997) (quotation marks and citations omitted). Therefore, to the extent that the instant jury instruction infringed upon Mitchell's right to due process of law under article I, section 5 of the Hawai'i Constitution,[6] we review the instruction under the "right/wrong" standard.

### B. *The court's instruction regarding HRS § 708–801(4) violates HRE Rule 306 and relevant case law.*

In the instant case, Mitchell argues that the circuit court's instruction regarding HRS § 708–801(4) "failed to inform the jury as to

---

**6.** Article I, section 5 of the Hawai'i Constitution provides:

No person shall be deprived of life, liberty or property without due process of law, nor be denied the equal protection of the laws, nor be denied the enjoyment of the person's civil rights or be discriminated against in the exercise thereof because of race, religion, sex or ancestry.

the [State's] burden of negativing the valuation defense." In other words, Mitchell argues that the circuit court's instruction shifted the State's burden of proof regarding the valuation element of the offense to him. We agree that as Mitchell argued before the circuit court, HRE Rule 306(a) required the circuit court to further instruct the jury in regards to the presumption created by HRS § 708–801(4). Because the circuit court failed to follow HRE Rule 306(a), we vacate the circuit court's judgment and remand for a new trial.

### 1. *Elements of theft.*

#### a.

Generally, under HRS § 708–830 (1993):

**Theft.** A person commits theft if the person does any of the following:

(1) Obtains or exerts unauthorized control over property. A person obtains, or exerts control over, the property of another with *intent* to deprive the other of the property.

(Emphasis added.)

Pursuant to HRS § 702–207 (1993),[7] the state of mind of "intent" applies to each material element of the offense. *See also* HRS § 702–204 (1993) (providing that "a person is not guilty of an offense unless the person acted intentionally, knowingly, recklessly, or negligently, as the law specifies, with respect to each element of the offense"); HRS § 702–205 (1993) and commentary (providing that the state-of-mind element specified for the offense applies to the conduct,

attendant circumstances, and results of conduct).

■■■ The elements of second degree theft are outlined in HRS § 708–831, in relevant part, as:

**Theft in the second degree.** (1) A person commits the offense of theft in the second degree if the person commits theft:

(a) Of property from the person of another;

(b) Of property or services the value of which exceeds $300;[8]

. . . .

(2) Theft in the second degree is a class C felony.

(Footnote inserted.)

The material elements of theft in the second degree are, therefore, that the defendant *intended* to: (1) obtain or exert unauthorized control over the property of another, HRS § 708–830(1); (2) deprive the other of his or her property, *id.;* and (3) deprive another of property that exceeds $300 in value (valuation element). HRS § 708–831(1)(b). The State must prove each of these elements beyond a reasonable doubt in order to make a prima facie showing of theft. HRS § 701–114 (1993);[9] *State v. Gaylord,* 78 Hawai'i 127, 136, 890 P.2d 1167, 1176 (1995) (holding the same in regards to HRS § 708–830(6)(a) (1993)).

#### b.

In regards to the third, valuation element, the defendant's state of mind is critical. Under Hawai'i's theft provisions, which follow

---

7. HRS § 702–207 (1993) provides:

 **Specified state of mind applies to all elements.** When the definition of an offense specifies the state of mind sufficient for the commission of that offense, without distinguishing among the elements thereof, the specified state of mind shall apply to all elements of the offense, unless a contrary purpose plainly appears.

8. As in other jurisdictions, the degree of theft in our jurisdiction is determined by the value of the property stolen. *See* HRS § 708–831(1)(b) (setting the value for second degree theft at over $300); HRS § 708–832(1)(a) (1993) (setting the value for third degree theft at over $100); HRS § 708–833(1) (1993) (setting the value for fourth degree theft at $100 or less).

9. HRS § 701–114 (1993) provides, in relevant part:

 **Proof beyond a reasonable doubt.** (1) Except as otherwise provided . . ., no person may be convicted of an offense unless the following are proved beyond a reasonable doubt:
 
 (a) Each element of the offense;
 
 (b) *The state of mind required to establish each element of the offense;*
 
 (c) Facts establishing jurisdiction;
 
 (d) Facts establishing venue; and
 
 (e) Facts establishing that the offense was committed within the time period specified in section 701–108.
 
 (2) In the absence of the proof required by subsection (1), the innocence of the defendant is presumed.
 
 (Emphasis added.)

the Model Penal Code (MPC), *see* HRS § 708–830—833 commentary, the defendant's state of mind with regard to the value of the property determines the grade of the offense, and thus also determines the sentencing that will be imposed upon him or her. *Id.;* MPC § 223.1(3)(a) and (c) comment on grading of theft provisions (Official Draft 1980).

As the MPC notes, "The amount involved in a theft has criminological significance *only if it corresponds with what the thief expected or hoped to get.* To punish on the basis of actual harm rather than on the basis of foreseen or desired harm is to measure the extent of criminality by fortuity." MPC § 223.1(3)(c) comment on grading of theft provisions (emphasis added). This is primarily because:

> Putting a ceiling on punishment of petty theft accords with the almost universal present practice and with popular feeling. The ordinary individual feels lesser repugnance to the taking of smaller rather than larger amounts. Thus, the petty thief evinces a lesser departure from normal standards of respect for others' property; he [or she] is presumably not as hardened or dangerous. Shorter sentences should be sufficient to deter those who have not as much to gain. On the other hand, longer sentences are called for in the case of offenders who realize greater sums. Escalation of penalty according to amount stolen decreases the incentive for crime that greater profits might induce.

*Id.* at § 223.1(3)(a) comment on grading of theft provisions.

In order to establish a defendant's culpability for second degree theft, therefore, the State must prove that a defendant intended to steal the statutorily defined value, in this case $300, of the alleged property or services.

### 2. *HRS § 708–801(4) and HRE Rule 306.*

In Hawaiʻi, however, there is a statutory presumption that "[w]hen acting intentionally or knowingly with respect to the value of property or services is required to establish an element of an offense, *the value of property or services shall be prima facie evidence that the defendant believed or knew the property or services to be of that value.*" HRS § 708–801(4).[10] In the instant case, the manner in which this presumption was presented to the jury is dispositive, because if the jury was misled to believe that this presumption shifted to the defendant the burden of proving his state of mind as to the value of the property, then, as discussed below, the defendant's right to due process was violated.

As the Hawaiʻi Supreme Court stated in *State v. Bumanglag,* 63 Haw. 596, 618, 634 P.2d 80, 94 (1981),

> the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he [or she] is charged. Hence, an evidentiary device such as a presumption or an inference must not undermine the

---

**10.** HRS § 708–801 (1993) sets the standard applicable to valuation of property. In pertinent part, the statute provides:

> **Valuation of Property.** Whenever the value of property or services is determinative of the class or grade of an offense, or otherwise relevant to a prosecution, the following shall apply:
>
> (1) Except as otherwise specified in this section, value means the market value of the property or services at the time and place of the offense, or the replacement cost if the market value of the property or services cannot be determined.
>
> ....
>
> (3) When property has value but that value cannot be ascertained pursuant to the standards set forth above, the value shall be deemed to be an amount not exceeding $100.
>
> (4) When acting intentionally or knowingly with respect to the value of property or services is required to establish an element of an offense, *the value of property or services shall be prima facie evidence that the defendant believed or knew the property or services to be of that value. ...*
>
> (5) When acting intentionally or knowingly with respect to the value of property or services is required to establish an element of an offense, *it is a defense, which reduces the class or grade of the offense to a class or grade of offense consistent with the defendant's state of mind, that the defendant believed the valuation of the property or services to be less.*

(Emphases added.)

224

factfinder's responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt. (Quotation marks and citations omitted.) *See generally State v. Pone,* 78 Hawai'i 262, 892 P.2d 455 (1995) (holding that an instruction on the presumption regarding consent for criminal property damage in the fourth degree did not violate due process); *State v. Pimentel,* 61 Haw. 308, 603 P.2d 141 (1979) (holding invalid a jury instruction regarding the possession of heroin that impermissibly shifted the burden from the State to the defendant); *State v. Brighter,* 61 Haw. 99, 595 P.2d 1072 (1979) (holding invalid a jury instruction regarding HRS § 712–1251, regarding the state of mind necessary for possession of contraband drugs for personal use); *State v. Dwyer,* 57 Haw. 526, 560 P.2d 110 (1977) (holding unconstitutional a jury instruction regarding the state of mind of a defendant in regards to a negotiable instrument, where the instruction impermissibly shifted the burden to the defendant); *State v. Cuevas,* 53 Haw. 110, 488 P.2d 322 (1971) (holding unconstitutional a statutory presumption regarding the state of mind necessary for second degree murder where the presumption impermissibly shifted the burden of persuasion to the defendant).

a. *HRE Rule 306.*

In order to safeguard an accused's well-established due process rights, common law and statutory presumptions in our jurisdiction are governed by HRE Rule 306, HRS § 701–117 (1993), which provides, in pertinent part:

**Presumptions in criminal proceedings.**
(a) Presumptions against the accused.

(1) Scope. Except as otherwise provided by statute, in criminal proceedings, presumptions against an accused, recognized at common law or created by statute, including statutory provisions that certain facts are prima facie evidence of other facts or of guilt, are governed by this subsection.

(2) Submission to jury. When a presumed fact establishes an element of the offense or negatives a defense, *the court may submit the presumption to the jury only if a reasonable juror on the evidence as a whole, including the evidence of the basic facts, could find the presumed fact beyond a reasonable doubt.*

(3) Instructing the jury. *The court may not direct the jury to find a presumed fact against the accused.* Whenever a presumption against the accused is submitted to the jury, the court shall instruct the jury that, if it finds the basic facts beyond a reasonable doubt, *it may infer the presumed fact but is not required to do so. In addition, if the presumed fact establishes an element of the offense or negatives a defense, the court shall instruct the jury that its existence, on all the evidence, must be proved beyond a reasonable doubt.*

(Emphases added.)

◼ The extensive commentary appended to HRE Rule 306 explains that this rule was promulgated in order to ensure that a factfinder's role in determining a defendant's culpability is not undermined by a statutory or common law presumption. HRE Rule 306 commentary (quoting *County Court v. Allen,* 442 U.S. 140, 157, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979)).[11]

11. The limitations recognized in Hawai'i Rules of Evidence (HRE) Rule 306 were promulgated in response to a series of United States Supreme Court cases that analyzed the constitutionality of certain statutory presumptions. *See County Court v. Allen,* 442 U.S. 140, 160–61, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979) (holding constitutional a permissive statutory presumption regarding the possession of firearms where the jury was properly instructed that it could disregard the presumption); *Barnes v. United States,* 412 U.S. 837, 845–46, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973) (holding constitutional a permissive statutory presumption regarding a negotiable instrument where the jury was similarly instructed); *Turner v. United States,* 396 U.S. 398, 423–24, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970) (holding unconstitutional a statutory presumption regarding the possession of cocaine); *Leary v. United States,* 395 U.S. 6, 52–53, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969) (holding unconstitutional a statutory presumption regarding the possession of marijuana); *Tot v. United States,* 319 U.S. 463, 469–70, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943) (holding

Because of the possibility that a statutory presumption can have an impermissible burden-shifting effect, "[i]n drafting the [Hawai'i Penal Code], [our legislature has] substituted the concept of prima facie evidence for presumptions, which appear to create insurmountable difficulties for lawyers, courts, and juries." HRS § 701–117 (1993) commentary; *see also Pone*, 78 Hawai'i at 268, 892 P.2d at 461 (quoting the same). This is because

> [o]ften it is desirable to enable the prosecution to get to the [trier of fact] on something less than positive proof of a fact which may be almost solely within the knowledge of the defendant.... Thus, the prima facie evidence rule helps the prosecution to get its case to the [trier of fact] without necessarily meeting its burden of persuasion.

*Pone*, 78 Hawai'i at 268, 892 P.2d at 461 (quoting HRS § 701–117). HRS § 701–117 defines "prima facie evidence" as "a fact ... which, if accepted in its entirety by the trier of fact, is sufficient to prove the fact." Consequently, HRE Rule 306 governs statutory presumptions created by the "prima facie evidence" language used by our legislature.

Our supreme court examined the prima facie evidence rule, in light of HRE Rule 306(a), as changing statutory presumptions into "a form of gently commended inference that has been held not to violate due process." *Id.* at 273, 892 P.2d at 466 (quotation marks omitted).

> Put differently, an HRE 306(a) presumption against the accused ... merely creates a "permissible inference of fact" whereby the trier of fact is permitted but not compelled to draw an inference of guilt from the circumstances which constitute a prima facie case and retains the prerogative to determine whether a reasonable doubt of guilt exists despite the permitted inference, whether or not the accused has offered any evidence.
>
> . . . .

unconstitutional a statutory presumption regarding the possession of firearms). Generally,

> [w]hat has been established by the cases ... is at least this: that if a statutory inference submitted to the jury as sufficient to support conviction satisfies the reasonable-doubt standard (that is, the evidence necessary to invoke the inference is sufficient for a rational juror to find the inferred fact beyond a reasonable doubt) as well as the more-likely-than not standard, then it clearly accords with due process.

*Barnes*, 412 U.S at 843, 93 S.Ct. 2357.

Our supreme court has generally followed this rule. *See generally State v. Pone*, 78 Hawai'i 262, 892 P.2d 455 (1995) (holding that an instruction on the presumption regarding consent for criminal property damage in the fourth degree to be constitutional); *State v. Bumanglag*, 63 Haw. 596, 634 P.2d 80 (1981) (holding unconstitutional HRS § 712–1216(1), a statutory presumption regarding the state-of-mind element of a pornography offense because it impermissibly infringed upon a First Amendment right); *State v. Pimentel*, 61 Haw. 308, 603 P.2d 141 (1979) (holding invalid a jury instruction regarding the possession of heroin that impermissibly shifted the burden from the State to the defendant); *State v. Brighter*, 61 Haw. 99, 595 P.2d 1072 (1979) (holding invalid a jury instruction regarding HRS § 712–1251, regarding the state of mind necessary for possession of contraband drugs, for personal use); *State v. Dwyer*, 57 Haw. 526, 560 P.2d 110(1977) (holding invalid a jury instruction regarding the state of mind of a defendant involving a negotiable instrument, where the instruction impermissibly shifted the burden to the

defendant); *State v. Cuevas*, 53 Haw. 110, 488 P.2d 322 (1971) (holding unconstitutional a statutory presumption regarding the state of mind necessary for second degree murder).

The test that we apply to a presumption created by "prima facie evidence," as adopted by our supreme court from the U.S. Supreme Court, is that

> [a] statutory presumption cannot be sustained *if there be no rational connection between the fact proved and the fact presumed, if the inference of one from proof of the other is arbitrary because of a lack of connection between the two in common experience.*

*Pone*, 78 Hawai'i at 269, 892 P.2d at 462 (1995) (quoting *Dwyer*, 57 Haw. at 529–30, 560 P.2d at 112–13 (quoting *Tot v. United States*, 319 U.S. at 467, 63 S.Ct. 1241)) (other citation omitted) (emphasis in original).

We do not address the issue of HRS § 708–801(4)'s "rational connection" to the underlying facts of the instant case because Mitchell does not argue that HRS § 708–801(4) (1993) is unconstitutional. We note, however, that the "shall" language in HRS § 708–801(4) appears to create a mandatory rebuttable presumption, *see McLean v. Moran*, 963 F.2d 1306, 1308–09 (9th Cir.1992) (classifying and defining statutory presumptions), which our supreme court and the United States Supreme Court disfavor as unconstitutional. *See Bumanglag*, 63 Haw. at 619, 634 P.2d at 94 (stating that a mandatory presumption or inference is "impermissible" because it has a burden-shifting effect); *McLean*, 963 F.2d at 1308–09 (discussing the Supreme Court's disfavor of such presumptions).

Viewed in this manner, it becomes apparent that HRE 306(a) "presumptions against the accused" are no more than legislatively or judicially enshrined and constitutionally circumscribed corollaries to the proposition, well settled in this jurisdiction, that guilt may be proved beyond a reasonable doubt on the basis of reasonable *inferences* drawn from circumstantial evidence.

*Id.* (quotation marks, brackets, and citations omitted).

■ Thus, in our jurisdiction, HRE Rule 306 safeguards the constitutional rights of an accused by providing a trial court with the proper jury instructions for a statutory presumption, which instructions provide the language necessary to clarify the burdens of proof for the material elements of an offense. Consequently, it is extremely important that a trial court follow HRE Rule 306.

b. *Relevant case precedent.*

The dispositive issue in the instant case is whether, due to the circuit court's failure to follow HRE Rule 306(a), the court's instruction regarding HRS § 708–801(4) impermissibly shifted the burden of proof to Mitchell. Although our jurisdiction has not yet addressed the issue of how a trial court should instruct the jury regarding HRS § 708–801(4), the issue of when a jury instruction regarding a statutory presumption impermissibly shifts the burden to a defendant is not novel.

In *State v. Brighter,* our supreme court examined an instruction regarding a statutory presumption that provided for the state-of-mind element for the offense of promoting a detrimental drug in the second degree. The trial court instructed the jury that under HRS § 712–1251, the presence of a detrimental drug in a motor vehicle was prima facie evidence of the defendant's knowing possession of that drug. *Brighter,* 61 Haw. at 102, 595 P.2d at 1074. The defendant argued that the statutory presumption was unconstitutional because it impermissibly shifted the burden of proof to him and violated his due process rights. *Id.* at 100, 595 P.2d at 1073–74.

While our supreme court held that HRS § 712–1251 was constitutional, *id.* at 110, 595 P.2d at 1079, it held unconstitutional the trial court's instruction that "prima facie evidence" of an underlying fact sufficiently proved the fact, so long as the defendant did not, in rebuttal, introduce evidence that could negative the factual presumption. *Id.* at 110–11, 595 P.2d at 1079–80. The court concluded:

[T]he giving of [the State's instruction] . . . served to shift the burden of proof to appellant. The instruction charged that proof of the underlying facts "is sufficient to prove the fact" of knowing possession, provided that no contrary evidence amounting to a reasonable doubt "is introduced." *Although the instruction faithfully tracked the language of [the statute], we are not fully convinced that the jurors could not have been misled into thinking that they were required to find the element of knowing possession in the absence of defense evidence amounting to a reasonable doubt.* In view of our holding that only permissive inferences may arise under [the statute], the jury should have been given a clarifying instruction to the effect that it could but was not required to find the element of knowing possession upon proof of the underlying facts.

*Id.* at 111, 595 P.2d at 1079–80 (citation omitted) (emphasis added). *See also Bumanglag,* 63 Haw. at 619–20, 634 P.2d at 95 (discussing and applying *Brighter,* and concluding that the statutory presumption at issue was constitutionally infirm).

Similarly, in *State v. Pimentel,* our supreme court struck down a jury instruction providing that the jury's finding that a drug was actually heroin was sufficient for the jury to infer that the defendant actually knew that the substance was heroin. 61 Haw. at 310–11, 603 P.2d at 142–43. The court held that

[the State's instruction] was deficient in that it did not clearly indicate to the jury that any inference which could have been drawn by it was merely permissive. The jurors could have thought that they were required to find knowledge in the absence

of defense evidence negating such knowledge.

*Id.* at 311, 603 P.2d at 143. The court thus reversed and remanded the case for a new trial. *See also Cuevas,* 53 Haw. at 112–13, 488 P.2d at 324 (holding unconstitutional a statutory presumption where "the burden imposed upon the accused [was] not merely a burden of going forward with the evidence or of raising a reasonable doubt, but [was] a burden of persuasion of the nonexistence of an essential element of the crime of murder.").

■ This brief review of our case law reveals that the rule established by our supreme court supports that provided for in HRE Rule 306, namely, that unless the jury is instructed that a statutory presumption is merely a permissible inference of fact, the instruction violates a defendant's constitutional right to due process.

### c. *Application to facts.*

■ In the instant case, we must consider whether the circuit court's instruction regarding the statutory presumption created by HRS § 708–801(4) was properly presented to the jury. After a full review of the record, we conclude that the circuit court failed to follow the mandates set forth by our case precedent and HRE Rule 306, and thus violated Mitchell's due process rights under article I, section 5 of the Hawai'i Constitution.

### i. *The circuit court's instruction violated HRE Rule 306.*

The circuit court's instruction to the jury tracked the language of HRS § 708–801(4), but failed to provide the necessary constitutional safeguards embodied in HRE Rule 306, by merely stating:

When acting intentionally or knowingly with respect to the value of property is required to establish an element of an offense, *the value of the property shall be prima facie evidence that a defendant believed or knew the property to be of that value.* However, if a defendant believed that the valuation of the property was less than that value, the charged offense shall be reduced to a class or grade consistent with the defendant's state of mind.

(Emphasis added.) No other corrective or clarifying instructions were provided.

Reading the face of this instruction, we believe that a reasonable juror would assume that the State's burden of proving Mitchell's state of mind as to the value of the property was removed and placed upon the defendant. This is doubly so because the court gave no corrective instructions, as mandated by HRE Rule 306(a)(3).

As the commentary to HRE Rule 306 advises:

Since Brighter and Pimentel, supra, suggest strongly that mandatory criminal presumptions are not permissible in Hawaii [Hawai'i], *trial judges are well advised to exercise great care in drafting suitable jury instructions in these cases.* This is all the more so in light of Rule 1102 infra, which prohibits the court from commenting upon the evidence.

(Emphasis added.)

An example of a properly presented statutory presumption under HRE Rule 306 would be one in which the circuit court: (1) first determined that "a reasonable juror on the evidence as a whole, including the evidence of the basic facts, could find the presumed fact beyond a reasonable doubt[,]" HRE Rule 306(a)(2); and (2) instructed the jury that "it may *infer* the presumed fact but is not required to do so[,]" HRE Rule 306(a)(3) (emphasis added); and further, (3) "if the presumed fact establishes an element of the offense or negatives a defense," instructed the jury that in order to apply the presumption, it must find that the presumed fact exists beyond a reasonable doubt. *Id.* Thus properly presented to the jury, the otherwise violative statutory presumption is changed into a permissible inference of fact.

In the instant case, there is no evidence that any of the above steps were followed, even though the statutory presumption in the instant case was the kind most in need of HRE Rule 306's safeguards. Because no corrective or clarifying instructions were provided, we conclude that the court's instruction violated Mitchell's due process rights.

ii. *The circuit court's error was not harmless.*

 Furthermore, this error was not harmless beyond a reasonable doubt. An accused's right to due process is of overriding importance. As our supreme court has reiterated:

> The right of an accused to be convicted only upon proof by the prosecution of all of the elements of the crime charged against him [or her] beyond a reasonable doubt is a constitutionally protected right.
>
> . . . .
>
> We do not think that an instruction to the jury ... couched in the language of the statute in question can ever be harmless. The error is neither unimportant nor insignificant; it infringes upon a basic right of the accused; it raises a reasonable possibility that it might have contributed to the conviction; and we cannot say that it was harmless beyond a reasonable doubt.

*Pone,* 78 Hawai'i at 268, 892 P.2d at 461 (quoting *Cuevas,* 53 Haw. at 112–16, 488 P.2d at 325).

 Furthermore, "[e]rroneous instructions are presumptively harmful and are a ground for reversal unless it *affirmatively appears* from the record as a whole that the error was not prejudicial." *Cullen,* 86 Hawai'i at 8, 946 P.2d at 962 (quotation marks and citations omitted) (emphasis added). We conclude that the circuit court's lack of instruction regarding the statutory presumption in question is reversible error. There is no affirmative showing in the record that the error was not prejudicial, and ample evidence indicating that it was. The instruction shifted the burden of proof from the State to Mitchell on a material element of the offense and determined the gradation of the offense as well as the court's sentencing of Mitchell. Consequently, we cannot label the circuit court's error "harmless beyond a reasonable doubt[.]" *State v. Huihui,* 62 Haw. 142, 145, 612 P.2d 115, 117 (1980).

Accordingly, we vacate the circuit court's judgment and remand for a new trial consistent with the conclusions in this opinion.

C. *Other relevant issue raised: Tampering with the evidence.*

Mitchell also argues that the circuit court erred when it denied his December 26, 1995 motion to dismiss, in which Mitchell argued that the case should be dismissed because the State had tampered with the evidence. The circuit court denied this motion in its March 7, 1996 Findings and Order Denying Defendants' Motion to Dismiss Complaint for Violation of Discovery Order or, in the Alternative, for Sanctions, and orally denied Mitchell's orally-made renewed motion to dismiss.

As guidance to the circuit court on remand, we conclude that the circuit court properly denied Mitchell's motions to dismiss.

1.

 Appellate review of factual determinations made by the trial court deciding pretrial motions in a criminal case is governed by the "clearly erroneous" standard. A finding of fact is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made.

*State v. Okumura,* 78 Hawai'i 383, 392, 894 P.2d 80, 89 (1995) (quotation marks and citations omitted).

2.

 It is well settled that when the State is charged with tampering with the evidence, "[i]t is not necessary to negate all possibilities of tampering with an exhibit, it being sufficient to establish only that it is reasonably certain that no tampering took place, with any doubt going to the weight of the evidence." *State v. Olivera,* 57 Haw. 339, 344–45, 555 P.2d 1199, 1203 (1976) (citations omitted); *see also State v. Vance,* 61 Haw. 291, 304, 602 P.2d 933, 942 (1979) (citing *Olivera* for the same proposition); *State v. Antone,* 62 Haw. 346, 351, 615 P.2d 101, 106 (1980) (stating the same). In regards to establishing chain of custody,

[i]n showing chain of custody, all possibilities of tampering with an exhibit need not be negated. Chain of custody is sufficiently established where it is reasonably certain that no tampering took place, with any doubt going to the weight of the evidence.... *And despite the mere possibility that others may have had access to the exhibits, there exists a reasonable certainty that no tampering took place.*

*State v. DeSilva,* 64 Haw. 40, 41, 636 P.2d 728, 730 (1981) (citations omitted) (emphasis added).

### 3.

Applying the above standards to the instant case, and after fully reviewing the record, we conclude that the circuit court did not clearly err in denying Mitchell's motions to dismiss. At least two witnesses testified on behalf of the State that the evidence had not been tampered with. One was Terayama, who was in charge of securing the evidence, and one a police officer who witnessed the evidence on the evening of the theft.

In denying Mitchell's first motion to dismiss, the circuit court found: "Even assuming that an 'order' was made, the Court finds that the defendants have failed to prove any 'tampering' of the evidence by the complainant and/or his agents."

In making its finding and order, the circuit court was required to weigh the testimony of the witnesses and judge their credibility;

[t]he power to judge credibility of witnesses, resolve conflicts in testimony, weigh evidence and draw factual inferences, is vested in the trial court. On appeal, all presumptions favor proper exercise of that power, and the trial court's findings whether express or implied must be upheld if supported by substantial evidence.

*State v. Ganal,* 81 Hawai'i 358, 370, 917 P.2d 370, 382 (1996) (brackets and citation omitted).

The State's witnesses provided substantial evidence to support the conclusion that, to a reasonable degree of certainty, the evidence had not been tampered with. In light of this evidence, the circuit court's findings were not clearly erroneous. Consequently, we conclude that the circuit court did not err in denying Mitchell's motions to dismiss.

### IV. *CONCLUSION*

In conclusion, we vacate the circuit court's judgment because the circuit court failed to follow HRE Rule 306 and relevant case law in regards to its instruction to the jury on the statutory presumption contained in HRS § 708-801(4). We hold that, because of the seriousness of the constitutional violation, this error was not harmless. We thus remand the case for a new trial consistent with this opinion.

As guidance to the circuit court and the parties on remand, we further conclude that the circuit court's denials of Mitchell's motions to dismiss, regarding the State's alleged tampering with the evidence, were not clearly erroneous.

Our disposition of this appeal renders it unnecessary for us to address Mitchell's remaining points of error.